131 So.2d 873

**Ex parte Nick TSIMPIDES et al.**

**6 Div. 550.**

Supreme Court of Alabama.

March 30, 1961.

Rehearing Denied June 29, 1961.

Lange, Simpson, Robinson & Somerville, Birmingham, for respondent.

Geo. D. Finley and M. B. Grace, Birmingham, for petitioners.

Burr, McKamy, Moore & Thomas, Birmingham, for Thomas Meador, amicus curiae.

STAKELY, Justice.

In this case, there is an original petition for mandamus which seeks to review an order of Judge Robert C. Giles, Judge of the Circuit Court of Jefferson County, dated February 5, 1960.

Petitioners contested an alleged will of their late brother, Charles Tsimpides, in the Jefferson County Circuit Court. A jury upheld the will as against the contentions of the petitioners and Circuit Judge Giles denied a motion by petitioners for new trial. Thereupon, petitioners appealed the cause to this court, filing security for costs, with a surety bond, which was approved by the clerk of the circuit court. Petitioners then gave notice to Mr. Thomas Meador, who had taken down in shorthand the testimony adduced in the will contest and requested that he transcribe and file his notes of testimony with the clerk of the circuit court so that they might be used on the appeal. Mr. Meador declined to transcribe these notes until his fees therefor were paid in advance. Petitioners subsequently filed a motion with Judge Giles seeking, inter alia, an order requiring the reporter to transcribe and file the testimony as requested without prepayment of the fees.

After a hearing on the motion, the trial court denied the motion and entered the order here in question, the material portion of which is as follows:

"Upon the aspect of the motion requiring the Court Reporter to transcribe the testimony without payment in advance of his charges, it is Ordered that said Reporter promptly proceed to transcribe and file the testimony upon the Contestant-Appellant assuming payment in full therefor when the transcript is ready for filing, by filing with the Clerk of this Circuit Court a bond with sufficient surety to be taken and approved by said Clerk, payable to the said Court Reporter in the maximum sum of $1,000.00, conditioned upon prompt payment by the appellant to said reporter of his lawful fees for his services in preparing and filing such transcript, pursuant to Code of Alabama 1940, Title 7, Section 827(2) (1955 Cumulative Pocket Part), such payment to be made at the time of such filing of the transcript."

Title 7, § 827(2), 1955 Cumulative Pocket Part, cited in the order, reads as follows:

"Upon payment of a transcript fee of fifteen cents for each one hundred words thereof, and for each carbon copy made at the same writing of five cents for each one hundred words thereof, in any case at law, the party desiring to appeal shall be entitled to have the court reporter promptly transcribe the evidence in the case hereinabove provided. Nothing in sections 827(1) to 827(6) of this title shall prevent either party from appealing upon the record without a transcript of the evidence; but *such court reporter shall not be required to perform any part of such service until payment in full is assured when the transcript is ready for filing.* The fees of the reporter for preparing the transcript shall be taxed as a part of the costs of the appeal." [Emphasis added.]

It may be well to note at this point that there is no provision for an official court reporter serving the Circuit Court of Jefferson County, in Birmingham, in civil cases at law. Local Acts 1939, p. 175. As we understand the situation, Mr. Meador is a private businessman employed by private contract to render stenographic services in reporting testimony in such cases.

In the hearing on the presentation of the petition for mandamus before this court, it was agreed to waive the issuance of the

rule nisi. Accordingly, in behalf of Judge Giles, there has been filed a demurrer to the petition, a motion to strike portions thereof and an answer to the allegations of the petition. The case is submitted in this court on the sworn petition, the demurrer thereto and the sworn answer of the respondent, Judge Giles. Mr. Thomas Meador has appeared as amicus curiae by his attorneys and submitted a brief in opposition to the petition.

While the question does not appear to be raised directly in petitioners' briefs, it seems necessary at the outset to state that Judge Giles' order is in our judgment within the scope of the language and the authorization of the "assurance" clause of the statute. In the absence of a statutory requirement of assurance, a court reporter, and especially one who, like Mr. Meador in the case at bar, is a private contractor employed for the job at hand, and not a public employee, would be unable to obtain payment for his services until the final disposition of the cause on appeal and the determination of costs and, further, would be forced to bear the risk of uncollectibility of payment from a losing appellee, from whom no security* for appeal costs is required. Such indeed appears to have been the situation before 1951.

Prior to 1951, the act abolishing bills of exceptions in certain cases, of which the statute in question is a part, provided, in its material portion, that:

"Upon filing security for costs of appeal in any case at law the party desiring to appeal shall be entitled to have the court reporter transcribe the testimony * * * and the court reporter's fees for transcribing and filing and certifying the testimony shall be taxed as a part of the costs of appeal as other costs of appeal are taxed and shall be paid in the same manner as other costs of appeal. If no security for costs of appeal is filed and approved, then the party demanding transcript of testimony from the court reporter

shall pay the court reporter the usual fees therefor." Acts of 1943, No. 461, § 2, p. 424.

By Acts of 1951, No. 886, p. 1529, the statute was amended to read as at present, except that the provision for taxing reporter's fees as costs of appeal was added by Acts of 1953, No. 80, p. 123.

The purpose of the 1951 amendment, we take it, was to rectify the situation described by providing assurance of payment. We consider that Judge Giles' order was a proper application of the statutory purpose and that the requirements imposed by the order are not in excess of the needs for a proper assurance.

Petitioners have in brief contended that it is the custom for the reporter merely to obtain a verbal "assurance" from counsel for an appellant that the fees will be paid. A personal agreement of this kind is, of course, unobjectionable if it is to the satisfaction of the parties to such agreement. But the purpose of the statute, as we have pointed out, is to provide virtual certainty that the reporter's fees will be paid. An informal promise by counsel might not give that certainty. We see no justification in the statute for compelling a reporter to accept such a promise when it is not satisfactory to him.

We recognize that the statute as applied in the instant case does impose an appreciable burden on an appellant and particularly on an impecunious appellant. But as this court said in Wheeler v. Alabama National Bank of Montgomery, 262 Ala. 36, 76 So.2d 679, 680:

"* * * It, of course, might invite the sympathy of the court if a person's rights go unconsidered because that person is unable to pay the court reporter for a transcript. But this situation must certainly have been contemplated by the legislature when they abolished bills of exceptions. * * *"

Assuming, then, that the statute itself is valid, we conclude that it properly authorizes the order in question.

The Wheeler case, supra, does not appear to have considered the question of the constitutionality of the statute. The question remains, therefore, whether the legislature in seeking to remove the risk and burden from the court reporter has placed an unconstitutional burden on the person who wishes to appeal. It is petitioners' position that the burden thus imposed is repugnant to the provisions of §§ 10 and 13 of the Constitution of Alabama of 1901 and to those of the 14th Amendment to the United States Constitution.

Section 10 of the Alabama Constitution provides:

"That no person shall be barred from prosecuting or defending before any tribunal in this state, by himself or counsel, any civil cause to which he is a party."

Section 13 provides:

"That all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay."

This court has consistently held that review by appeal as distinguished from the common law review by remedial and original writs and the general appellate supervision vested in this court by § 140 of our Constitution, is entirely a creature of the legislature. A party has no vested right to an appeal other than what the legislature may care to confer. "An appeal is taken to an appellate court, not as a vested right, but by the grace of a statute * * * and must be perfected and prosecuted pursuant to the time and manner prescribed * * *." Lewis v. Martin, 210 Ala. 401, 409, 98 So. 635, 642. See also, Stanton v. Monroe County, 261 Ala. 61, 72 So.2d 854; Clary v. Cassels, 258 Ala. 183, 61 So.2d 692; Woodward Iron Co. v. Bradford, 206 Ala. 447, 90 So. 803; Coker v. Fountain, 200 Ala. 95, 75 So. 471. " * * *

the Legislature can limit, restrict, or abolish the right of appeal so long as it does not attempt to restrict the right of this court to exercise its superintendence and control over inferior tribunals under section 140 of the Constitution." Ex parte Louisville & N. R. Co., 214 Ala. 489, 108 So. 379, 380; Woodward Iron Co. v. Bradford, supra; Skinner v. Phillips, 257 Ala. 138, 57 So.2d 515.

An example of such limitation, restriction, or condition is the requirement of a bond for security for costs of appeal. Tit. 7, § 729, Code 1940; Skinner v. Phillips, supra; Dortch Baking Co. v. Schoel, 239 Ala. 266, 194 So. 807; Harris v. Barber, 237 Ala. 138, 186 So. 160. In an early opinion, this court stated in regard to a statute requiring bond or security for costs that the enactment "was obviously intended to protect parties and the officers of the court, against insolvent litigants," and held that "This legislative regulation is binding on us." Thompson v. Lea, 28 Ala. 453, 457. Similarly, the present statute is for the protection of reporters against insolvent litigants. We think it equally binding on us.

With respect to the specific language of §§ 10 and 13 of our Constitution, set forth above, we point out that petitioners are not "barred from prosecuting or defending" before this tribunal under § 10. Petitioners still have available the common law remedies and review under § 140 of the Constitution and, indeed, can still take a statutory appeal on the record proper under Tit. 7, § 827(2), the very statute here in question (which provides that "Nothing in sections 827(1) to 827(6) of this title shall prevent either party from appealing upon the record without a transcript of the evidence; * * *.") But if petitioners wish to follow the procedure provided by the legislature, with full review on the entire transcript, they must comply with the rules laid down by the legislature. By the same token, this court is not closed to petitioners under § 13 of the Constitution nor is a remedy by due process denied.

Petitioners have pressed upon us certain authorities which we do not deem controlling in this case. We think it necessary, however, to examine these authorities and to point out the reasons for their inapplicability to the present question.

In Ex parte Eubank, 206 Ala. 8, 89 So. 656; Hines v. Hines, 203 Ala. 633, 84 So. 712; and Mickle v. State, Ala., 21 So. 66, we held the conditioning of divorce decrees on the payment of costs to be an invalid attempt to sell justice. It is sufficient to point out that those cases concerned situations in which a litigant was deprived of the benefits of a decree or judgment, already won in an original proceeding in a trial court, until payment was made. In the instant case, the petitioners have had their original day in court and are now merely seeking a review of that day by means of a statutory proceeding.

In South & North Alabama Railroad Co. v. Morris, 65 Ala. 193, we struck down a statute imposing on unsuccessful appellants in appeals of certain actions against railroad companies a "reasonable attorney's fee incurred by reason of such appeal, * * * not to exceed twenty dollars; * * *." That opinion, however, turned upon "the imposition of arbitrary, unjust, and odious discriminations, perpetrated under color of establishing peculiar rules for a particular occupation." The statute involved in the instant case imposes its requirements on any and all appellants indiscriminately. Furthermore, the Morris case was decided with reference not only to §§ 11 and 14 of the Constitution of 1875, the predecessors of §§ 10 and 13 of our present Constitution, but also to § 2 of Article I of the Constitution of 1875, which provided that all citizens are entitled to "equal civil and political rights." (We point out that § 2 of Article I of the Constitution of 1875 was dropped from the Constitution of 1901).

In Lassitter v. Lee, 68 Ala. 287, we held in conflict with the predecessors of the Constitutional sections here involved a statute providing that:

"* * * before any person, claiming title to real property sold for taxes under this act, shall be entitled to prosecute or defend any suit against any person claiming such property under any tax sale, he shall deposit with the court having jurisdiction in the case, double the amount of the purchase money, together with all taxes and interest accruing since the sale, the value of improvements made by the purchasers, * * * and the probable amount of costs of suit."

We held this statute an unreasonable, if indirect, prohibition, such as to "seriously impede, impair or cripple the rights designed to be guaranteed by these articles of the constitution." The practical effect of that statute, in short, was to impose an unreasonable bar to the bringing of an original proceeding and by the severity of its provisions to close the door to relief through the institution of litigation. We have already said enough to indicate that no such bar exists in the present case. See also, Whitworth v. Anderson, 54 Ala. 33; Stoudenmire v. Brown, 48 Ala. 699.

In Hartwell v. State, 225 Ala. 206, 142 So. 678, we examined in relation to §§ 10 and 13 of the Constitution a Local Act of 1931, p. 203 known as the "Sea Wall Act." This measure was passed pursuant to the authority of Amendment 21 to the Constitution of 1901, which "authorizes only an assessment against the land not to exceed the increase in the value of same as a result of the improvements, and is somewhat analogous to street pavements, * * *. It nowhere authorizes or contemplates a personal judgment against the owner of the land." The act dealt with "the assessment, hearings, and findings, and makes the finding of the commission final and conclusive 'unless appealed from on direct appeal, * * *.'" The act further provided for "an appeal to the circuit court [from the commission] upon filing with the clerk with sureties a bond in double the amount of the assessment and payable to the commission, 'and conditioned to prosecute said ap-

peal to effect, and to pay the amount of such assessment as finally may be levied against the property described in the appeal.'" We held the measure unconstitutional, pointing out that "in order for the landowner to test the assessment and to have a day in court he, with his sureties, must incur a personal liability, not merely for the cost, but for the amount assessed against his property, thus converting what was intended as a proceeding in rem to one in personam as a condition precedent to a hearing in the courts of his state." We said, "This is a denial of due process of law."

As we see it, the factors on which the Hartwell case turned were, first, that the "proceeding in rem" which the statute created was outside the authorization of Amendment 21 and, second, that an unreasonable barrier was erected to an effective appeal from the commission to the circuit court, which court proceeding, we pointed out, was "necessary to a due process in the premises" (citing Hamrick v. Town of Albertville, 219 Ala. 465, 122 So. 448, 452). In the instant case, as we have shown, petitioners have already had a day in a court. What they seek is a statutory review in another court.

Nor is the burden here imposed of the same character as that in the Hartwell case. In the Hartwell case, we made it clear that there was no all-encompassing ban on all security requirements. We there discussed the decision in Ex parte Gudenrath, 194 Ala. 568, 69 So. 629, noting that in that case "the proceedings were attacked as not affording due process and the court held that the statute did provide due process because, among other things, it gave the right of appeal to the circuit court by merely requiring security for cost, not in double the amount of the assessment as here."

Our attention is also called to the two decisions in Ex parte Wright, 226 Ala. 206, 146 So. 533; and 228 Ala. 96, 151 So. 865, an equity case. In the first Wright decision [226 Ala. 206, 146 So. 534], it was held that

a statute, Acts 1923, p. 203, providing that in counties of more than 200,000 population, the "official stenographer * * * shall not be required to perform any work or duty under this Act *unless the party requiring his services* shall first pay the fees hereinabove allowed to be charged, or shall give security for the payment thereof, * * *" related only to actions at law and was not applicable to cases in equity. The opinion went on, however, to remark obiter dictum:

"Still, if it be conceded that the act applies to services rendered in the equity division, it clearly does not contemplate that the reporter or a stenographer, on the appointment of the chancellor, could enter upon the performance of the duty of taking testimony that becomes a part of the record in the case and essential to a decision on the merits and to a review on appeal, and then refuse to transcribe the testimony, unless his fees are paid or secured by the parties in advance. Such construction would subordinate the administration of justice to the right to collect costs, and to so construe the act would render it in conflict with section 13 of the Constitution * * *."

In the second Wright decision, it appeared that the stenographer had been employed by counsel for one of the parties and not under the direction of the court and that the failure to appoint an official reporter, as required by statute, was the result of an oversight or "misunderstanding." But this court was satisfied that "Mr. Algee [the private stenographer] appeared to officially report the case, and did so report it, and thereafter duly filed his notes of the evidence * * * for filing in the office of the official stenographer * * *." [228 Ala. 96, 151 So. 868]. We held that the trial court should have required the stenographer to produce and file the stenographic notes of testimony and a transcription thereof so that an appeal could be perfected

with a full and complete transcript. We further observed that:

"A reporter, who undertakes to report the evidence in any given case, takes the office cum onere, whether it be only a temporary one, or one with a designated tenure. The fees and costs of transcribing the notes, like the fees of a commissioner, of the register, or of an examiner, appointed to take depositions in a chancery cause, become part of the costs in the case, and are to be taxed and paid accordingly. * * We know of no statute, and we have been referred to none, which give [sic] reporters a preferential status, nor would we be willing at this time to say that such a statute would be constitutional."

In the instant case there is, of course, a statute giving reporters a "preferential status." What now concerns us is the doubt expressed in both Wright opinions as to the constitutionality of such a provision.

We note that the expression of doubt was obiter dictum in both opinions. Furthermore, in the first Wright opinion there was cited in support of the statements the Mickle, Hines, Eubank, Stoudenmire, Whitworth, Lassitter and Hartwell cases, supra. We have already dealt with these cases above and shown that we do not regard them applicable in the instant situation. The second Wright opinion cites no authority on this point.

Furthermore, the Wright opinions concerned an equity case. Unlike cases at law, in equity cases the testimony is traditionally regarded as a part of the record. See Allen v. Allen, 223 Ala. 223, 225, 135 So. 169, 170, wherein we discussed "the ancient practice of the chancellors of reciting in their decrees at length the entire pleadings in the cause and the substance of the evidence contained in the depositions."

Finally, the second Wright opinion made it clear that:

"* * * we must not be understood as holding that a litigant, or his attorney, may not employ a stenographer, for his own private use and purposes in the trial of a cause, to make stenographic report of the proceedings, without subjecting such stenographer, so employed, to the jurisdiction of the court to require him to file the stenographic notes, together with a transcription * * * for the use of the court or the adversary party to the cause, on appeal. To so hold, would be an unwarranted invasion of the rights of a litigant, and would place an undue and illegal burden upon such stenographer. We are not now dealing with such a case. To the contrary, we are dealing with a stenographer, who was a pro hac vice court reporter."

Granting that the reporter in the instant case was not one privately employed by one of the parties for his own purposes, he was nevertheless a private contractor employed for the task and not an official reporter. About this there appears to have been no confusion at any time, contrary to the situation revealed in the second Wright opinion. In the Wright case the private stenographer, however inadvertently, filled the shoes of the official reporter. In the case at bar, as we have heretofore indicated, there was and could be no official reporter. We do not think that the Wright cases, or the cases previously discussed, require us to consider Mr. Meador an official court reporter.

■ We conclude, therefore, that the statute in question and the trial court's order thereunder are not repugnant to §§ 10 and 13 of the Alabama Constitution.

■ Petitioners further contend that the statute in question and the order of the trial court are in violation of the 14th Amendment to the Constitution of the United States. Petitioners appear to rely on the decision of the United States Supreme Court in Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891. That case concerned non-capital defendants convicted in an Illinois trial court,

who had filed and been denied a motion asking that a certified copy of the record, necessary for the complete bill of exceptions required by Illinois law for a full appellate review, be furnished them without cost, the defendants being unable to pay for such transcripts. The United States Supreme Court held that the denial, in effect, of review to some defendants on account of inability to pay for a transcript constituted a violation of the due process and equal protection clauses of the 14th Amendment. This case was followed and substantially reaffirmed in Eskridge v. Washington State Board of Prison Terms and Paroles, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269.

The instant case is different from the Griffin and Eskridge cases in that those were criminal cases while this is a civil case. But we consider this difference to be so decisive as to warrant no further discussion. We do not think that the Griffin decision and the Eskridge decision would extend to civil cases, such as this one, or that the statute in question is repugnant to the 14th Amendment as there interpreted.

So far we have discussed this case with no particular reference to the amount of the bond required by the trial court's order, "in the maximum sum of $1,000.00," or of the amount of the ultimate payment for the reporter's fees. Petitioners strenuously contend that the amount of the bond set by the trial court is grossly excessive.

The amount of the bond was set by the trial court after a hearing. At the present state of proceedings we have before us only the petitioners' petition, containing the trial court's order, and respondent's pleadings thereto. Other than the verdict, we have no other knowledge of what transpired in the trial court in regard to the merits or of the testimony presented. Even if we were disposed to do so, it would be impossible for us to give other than a speculative review of the propriety of the amount of the bond required by the trial court and it may be added that the amount of the ultimate payment of the reporter's fees will be as provided by the statute and, of course, cannot be in excess of the amounts therein allowed.

The writ of mandamus is denied.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.

On Rehearing.

STAKELY, Justice.

On application for rehearing the petitioner takes the position that we failed to give sufficient consideration to subsection 5 of § 827(1–6), Title 7, 1955 Cumulative Pocket Part, Code of 1940. We set out subsection 5 as follows:

"§ 827(5). 'Court reporter' defined; penalty for failure to transcribe and file testimony.—The term 'court reporter' as used in this law shall mean any person who shall be received and accepted by the court during the trial of a case, with the duty to record the testimony of witnesses in shorthand or stenotype notes for the purpose of preserving the testimony, whether such court reporter shall be an official court reporter or not; and any court reporter failing to transcribe and file testimony, pursuant to the terms of this law, shall be subject to discipline on the part of the court as and for a contempt of court."

Before discussing the statute we call attention to the answer of Judge Giles which contains, among other things, the following:

"In the opinion of this respondent the only act creating the office of official stenographer or court reporter of Jefferson County for civil cases at law in the Circuit Court (Birmingham Division), was the act of March 14, 1901 (Acts of 1901, page 2255), which was repealed by local acts of 1939, page 175, and since such repeal no such of-

fice has been in existence. Furthermore, for many years prior to the trial of case No. 43318–X in the Circuit Court of Jefferson County, Alabama, at law (the case in said Circuit Court from which the appeal described in the petition for mandamus was taken), and during the trial of said case, there was no person who had been elected or appointed to the office of official stenographer or court reporter of Jefferson County (for cases at law) under said Act of March 14, 1901, and at the time of said trial and for many years prior thereto all reporting of civil cases at law in the Circuit Court of Jefferson County, at Birmingham, was accomplished by private court reporting firms or individuals (among whom was said Mr. Thomas Meador), who became official reporters in such cases at law only under the act shown in Section 827(2), Title 7, in the cumulative *pocketpart* of the Alabama Code of 1940, when voluntarily assuming under said act the duties of reporter."

The facts set forth in the answer of Judge Giles are not controverted and we subscribe to his opinion in the answer which has been set forth.

■ Section 827(5) is by its own terms a definitional statute. It defines the terms used in the preceding sections of the act and in our judgment relates to the construction of those sections. Thus by § 827(2) among other things is it made clear that an unofficial reporter, though a private contractor, shall to the same extent as an official reporter (a) "promptly transcribe"

the evidence on payment of the prescribed fees, (b) that he "shall not be required to perform any part of such services until payment in full is assured * * *", and (c) that his fee shall be that prescribed by the statute. In the absence of § 827(5) or some equivalent, no system would be available to cover the reporting of civil cases at law in a county which has no official reporter. For example, in the absence of this section, a private contractor or unofficial reporter in such a county could charge excessive fees. It is § 827(5) which protects against such an abuse. To state the proposition a little differently, § 827(5) merely places the burden and the benefits of the preceding statutory sections on the unofficial reporter or private contractor. We are concerned here with a constitutional question and the effect of § 827(5) is that for purposes of applying the provisions of the reporter statute, the official reporter and the private contractor shall be treated alike. They have the same duties and the same privileges and they are to be paid on the said basis. But we do not consider that § 827(5) abolishes the natural distinction relevant for present constitutional purposes between official reporters and private contractors. There is nothing in the constitution, as we indicated in the original opinion, which says that for the purposes of applying the provisions of the constitution, the official reporter and the private contractor must be treated alike. Accordingly we do not consider that § 827(5) in any way disturbs the holding of this court that the pertinent statute, as applied to the private contractor, is constitutional.

Application for rehearing is denied.