Rel: September 5, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2025

_____

### SC-2025-0058

_____

**Traveka Stanley, Reginald Burrell, Charlie Gray, Jermaine Pringle, and Ranquel Smith**

**v.**

**Kay Ivey, Governor of Alabama, and John Hamm, Commissioner of the Alabama Department of Corrections, in their official capacities**

**Appeal from Montgomery Circuit Court**
**(CV-24-900649)**

PER CURIAM.

Traveka Stanley, Reginald Burrell, Charlie Gray, and Jermaine Pringle, who are inmates in the custody of the Alabama Department of Corrections ("ADOC") (these inmates are collectively referred to as "the prisoners"), appeal from the Montgomery Circuit Court's judgment dismissing their complaint against Kay Ivey, in her official capacity as the governor of Alabama, and John Hamm, in his official capacity as the commissioner of ADOC.[1] The prisoners originally appealed to the Court of Civil Appeals. The Court of Civil Appeals, by an order from its clerk's office, which contained a vote line showing all judges concurring, transferred the appeal to this Court on the basis that the Court of Civil Appeals "lacks jurisdiction over the [prisoners'] appeal." After thorough consideration, we transfer the appeal back to the Court of Civil Appeals.

---

[1]Dexter Avery also originally was a plaintiff in the prisoners' suit. However, after the circuit court entered its final judgment, but before the prisoners appealed, Avery died in prison.

Ranquel Smith originally was a plaintiff, and he was a party to this appeal, but on July 9, 2025, the parties filed a "Joint Motion for Partial Dismissal" because Smith was paroled from the physical custody of ADOC on July 3, 2025. On July 23, 2025, this Court granted the parties' requested dismissal of Smith from this case. Smith's dismissal from the case means that Count 3 of the prisoners' complaint, which challenged the constitutionality of an amended version of § 14-9-41, Ala. Code 1975, is also dismissed in its entirety because Smith had been the only plaintiff who asserted that count in the prisoners' complaint.

## I. Facts

For purposes of this appeal, the parties do not dispute the essential facts. Even if there was a dispute, because we are reviewing a judgment granting a motion to dismiss, the allegations in the prisoners' complaint amount to the relevant facts before us. See, e.g., Ex parte Blankenship, 893 So. 2d 303, 305 (Ala. 2004) ("[I]n reviewing a motion to dismiss, the Court '"must accept the allegations of the complaint as true."' Ex parte Alabama Dep't of Youth Servs., 880 So. 2d 393, 397 (Ala. 2003) (emphasis added) (quoting Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So. 2d 285, 288 (Ala. 2002))."). Because we are transferring the appeal, we provide only the facts necessary to explain that decision.

Each of the prisoners is incarcerated in an ADOC facility, and each participates in a voluntary work-release program authorized by Alabama law that pays the prisoners for their labor. Additionally, all the prisoners allege that they are required to perform housekeeping duties at the ADOC facilities where they are incarcerated. Those work duties include cleaning inmate cells and other prison areas, garbage pickup, facility repair, cafeteria duty, and laundry. The prisoners assert that they receive no monetary compensation for their labor at their ADOC facilities.

The prisoners further allege that each of them has received various forms of punishment for refusing to work, being late to work, being fired from a work-release job, or complaining about unsafe working conditions. According to the prisoners, those punishments have included being assigned extra work duty without pay, losses of telephone and canteen access, losses of visitation hours, losses of passes to visit family members, losses of good-time-behavior credits, and receiving unfavorable disciplinary reports that may affect consideration for parole. Each of the prisoners asserts that he or she "wants to work for a free-world employer, but [he or she] does not want to be punished by ADOC for not working if [he or she] cannot work or declines to do so, including for reasons such as illness or unsafe working conditions."

The prisoners assert that the punishments inflicted upon them for refusing to work are enabled by two policy initiatives implemented by the defendants. First, on January 9, 2023, Governor Ivey signed Executive Order No. 725 ("EO 725"), entitled "Promoting Public Safety by Establishing Standards and Accountability for Correctional Incentive Time." The prisoners allege that "EO 725 targeted labor strikers by permitting ADOC to take away good-time credits from incarcerated

people for 'encouraging or causing a work stoppage,' or simply 'refusing to work.'"[2] They further allege that "EO 725 explicitly requires punishment in the form of loss of good time and inability to accrue good time for refusing to work and permits other types of punishment, such as solitary confinement and loss of prison privileges."

Second, in response to EO 725, which instructed the ADOC commissioner to "implement ... uniform minimum standards for correctional incentive time sanctions pursuant to ... § 14-9-41(f)(1)[, Ala. Code 1975,]" Commissioner Hamm revised ADOC Administrative Regulation 403, entitled "Procedures for Inmate Rule Violations" ("AR 403"). The prisoners allege that "AR 403 sets out a scheme of rule violations, categorized by severity, and prescribes the possible forms of punishment for each rule violation." The prisoners assert that the forms of punishment include forfeiture of good time; a possible bar on earning good time; loss of privileges and incentives such as canteen, telephone, visitation privileges, and short-term passes to leave community-based facilities; and the imposition of "restrictive housing," i.e., solitary

---

[2]In their complaint, the prisoners allege that "thousands of incarcerated people across Alabama engaged in a system-wide labor strike in the fall of 2022. The strike lasted nearly a month."

confinement. The prisoners allege that AR 403 also allows ADOC to issue behavior citations and disciplinary reports to inmates that commit violations while engaged in a work-release program, the Alabama Correctional Industries ("ACI") program, or ADOC-facilities labor that could have a negative effect on determinations of parole by the Alabama Board of Pardons and Paroles.

The prisoners' complaint observes that, before the adoption of the recompiled Constitution in 2022, the Alabama Constitution of 1901 (Off. Recomp.), Article I, § 32, provided: "'That no form of slavery shall exist in this state; and there shall not be any involuntary servitude, <u>otherwise than for the punishment of crime, of which the party shall have been duly convicted</u>.'" (Emphasis added.) However, after the adoption of the recompiled Constitution in 2022, the same provision states: "That no form of slavery shall exist in this state; and there shall not be any involuntary servitude." Art. I, § 32, Ala. Const. 2022. The prisoners allege that the language that was deleted from Article I, § 32, was removed as a vestige of "racist language" due to Alabama's history of slavery, black codes, convict leasing, and chain gangs.

The prisoners assert that EO 725 and AR 403 violate Article I, § 32, of the current Alabama Constitution because "they require and enforce slavery and involuntary servitude." In their complaint, the prisoners seek a judgment declaring EO 725 and AR 403 unconstitutional and injunctions prohibiting Governor Ivey, Commissioner Hamm, and their employees, agents, and successors from enforcing EO 725 and AR 403. Stanley also seeks expungement of "any disciplinary and behavior citations issued after November 28, 2022, related to refusing to work or not working from [her] disciplinary and other ADOC records."

On June 5, 2024, Attorney General Steve Marshall, on behalf of Governor Ivey and Commissioner Hamm, filed a motion to dismiss the prisoners' complaint. The attorney general argued that the circuit court lacked subject-matter jurisdiction over the prisoners' claims under Article I, § 14, Ala. Const. 2022; that the prisoners lacked standing to challenge EO 725 because none of the prisoners possessed good-time credit at the time they commenced the lawsuit and were ineligible to accrue such credit; and that the prisoners had failed to state a claim for which relief could be granted because, according to the attorney general, even under the conditions alleged by the prisoners, the work they perform

7

does not constitute slavery or involuntary servitude under a correct interpretation of Article I, § 32.

On July 22, 2024, the prisoners filed their response in opposition to the motion to dismiss that attempted to answer each of the attorney general's contentions.

On July 29, 2024, the circuit court held a hearing concerning the motion to dismiss. On August 1, 2024, the circuit court entered a judgment dismissing the prisoners' claims against Governor Ivey and Commissioner Hamm. In pertinent part, the judgment stated: "[T]he Court finds that the motion [to dismiss] is due to be GRANTED because the Court lacks subject-matter jurisdiction due to sovereign immunity and lack of standing. [The prisoners'] claims are thus DISMISSED." (Capitalization in original.)

On September 10, 2024, the prisoners filed a notice of appeal to the Court of Civil Appeals. On October 2, 2024, the attorney general, on behalf of Governor Ivey and Commissioner Hamm, filed in the Court of Civil Appeals a motion to transfer the appeal to this Court. In that motion, the attorney general argued, among other things, that the appeal was due to be transferred to this Court because the prisoners sought

8

purely equitable relief that "lacks a quantifiable 'amount involved' and thus does not trigger [the Court of Civil Appeals'] limited appellate jurisdiction" under § 12-3-10, Ala. Code 1975. Motion to transfer, p. 2.

On October 9, 2024, the prisoners filed a brief in opposition to the attorney general's motion to transfer the appeal. The prisoners disagreed with the attorney general's understanding of how § 12-3-10's use of the term "amount involved" limited the jurisdiction of the Court of Civil Appeals. They urged the Court of Civil Appeals not to transfer their appeal to this Court.

On October 16, 2024, the attorney general filed a reply in support of the motion to transfer that sought to counter the prisoners' arguments.

On January 30, 2025, the Court of Civil Appeals entered an order that was signed by the clerk of that court but that contained a vote line showing that all the judges of the Court of Civil Appeals concurred. That order declared:

> "Before this court is the appellees' motion to transfer this appeal to the Supreme Court of Alabama. Having considered the record on appeal, the appellees' motion, and the [prisoners'] response, the court concludes that, although the [prisoners'] complaint seeks only injunctive and declaratory relief, the 'amount involved' in this case, which seeks to vindicate the [prisoners'] constitutional rights,

9

exceeds $50,000. See Coprich v. Jones, 406 So. 3d 58 … (Ala. 2024). As a result, this court lacks jurisdiction over the [prisoners'] appeal. See § 12-3-10, Ala. Code 1975. The … motion to transfer is granted, and the appeal is hereby transferred to the Supreme Court of Alabama."

## II. Analysis

The dispute between the parties as to whether this appeal belongs in the Court of Civil Appeals or in this Court revolves around their differing interpretations of § 12-3-10 and, more specifically, what the term "amount involved" means in the context of claims like those presented by the prisoners. Section 12-3-10, in pertinent part, now provides:

> "The Court of Civil Appeals shall have exclusive appellate jurisdiction of all civil cases where the amount involved, exclusive of interest and costs, does not exceed $50,000 …. Where there is a recovery in the court below of any amount other than costs, the amount of such recovery shall be deemed to be the amount involved; otherwise, the amount claimed shall be deemed to be the amount involved …."

This Court discussed the issue of the Court of Civil Appeals' appellate jurisdiction of claims solely seeking equitable relief in Coprich v. Jones, 406 So. 3d 58 (Ala. 2024). In Coprich, the plaintiff, Earnest Coprich, commenced an action seeking to set aside a deed he had executed that transferred ownership of his residence to the defendant,

10

Bessie Elizabeth Jones. Following a bench trial, the trial court ruled in favor of Jones, concluding that Coprich was competent to execute the deed and that no fraud or misrepresentation had occurred with the transfer. The evidence introduced at trial indicated that the property had been estimated to be worth, at most, $30,200. Coprich appealed to the Court of Civil Appeals, seeking a reversal of the trial court's judgment refusing to set aside the deed that transferred ownership of the property. The Court of Civil Appeals transferred the appeal to this Court, ostensibly on the ground that the appeal solely involved equitable relief. This Court's 9-0 per curiam opinion reviewed the history of law and equity in the Alabama court system, the creation of the Court of Civil Appeals, and the various changes over the years that occurred in the language of § 12-3-10. In light of those facts, this Court concluded that, "in cases in which the only requested relief is equitable and 'the amount involved' appears to be less than $50,000, the Court of Civil Appeals has 'exclusive appellate jurisdiction.'" Coprich, 406 So. 3d at 63. In reaching that conclusion, the Court explained that, before the adoption of the Alabama Code of 1975, the general appellate jurisdiction of the Court of Civil Appeals listed in § 12-3-10 was limited to "suits at law" but that,

11

following reforms in the court system that began in the late 1960s, law and equity were merged as a matter of procedure in the Alabama court system. That is why § 12-3-10 now states that the Court of Civil Appeals has "exclusive appellate jurisdiction of <u>all civil cases</u> where the amount involved … does not exceed $50,000." (Emphasis added.) The Court ruled that the fact that Coprich solely sought equitable relief did not deprive the Court of Civil Appeals of jurisdiction over the appeal because the "action is clearly a 'civil case' within the meaning of § 12-3-10" and "the 'amount involved' in the case clearly does not exceed the jurisdictional threshold of $50,000 provided in § 12-3-10."[3] <u>Id.</u> at 68. Thus, regarding

---

[3]In his motion to transfer, the attorney general argued that <u>Coprich</u> "was not a case involving purely equitable relief" because "Coprich's complaint expressly demanded damages, … so that case instead presented a mixed appeal involving both legal and equitable remedies. Unlike <u>Coprich</u>, this case involves not just equitable relief generally but equitable relief (injunctive and declaratory) solely." Motion to transfer, p. 6.

That argument misinterprets <u>Coprich</u>. The opinion expressly stated:

"[W]e have been informed that the Court of Civil Appeals transferred the present appeal to this Court, and that our Clerk's Office accepted the appeal, based on an understanding that Coprich was solely seeking equitable relief, i.e., seeking only to set aside the May 21, 2019, deed.[3]

12

the pertinent language of § 12-3-10, Coprich stands for the general proposition that, if a civil case is appealed to the Court of Civil Appeals and the "amount involved" does not clearly exceed $50,000, this Court will not accept a transfer of the case from the Court of Civil Appeals and purport to exercise jurisdiction over the appeal.

In its order transferring the appeal, the Court of Civil Appeals stated that, "although the [prisoners'] complaint seeks only injunctive and declaratory relief, the 'amount involved' in this case, which seeks to vindicate the [prisoners'] constitutional rights, exceeds $50,000," and it cited Coprich in support of that rationale. However, as should be clear from the above-articulated summary of the case, Coprich provides no

"_____

"[3]As we already have observed, Coprich's request for damages in his complaint was, at best, vague; in closing arguments, Coprich's counsel did not contend that Coprich was entitled to damages; Coprich's notice of appeal does not indicate that he is seeking a damages recovery; and on appeal Coprich does not mention seeking damages in any way."

Coprich, 406 So. 3d at 62. Thus, the opinion was clear that the Court treated Coprich's appeal as one seeking solely equitable relief. Moreover, as we have noted in the text, Coprich expressly held that, "in cases in which the only requested relief is equitable and 'the amount involved' appears to be less than $50,000, the Court of Civil Appeals has 'exclusive appellate jurisdiction.'" Id. at 63 (emphasis added).

13

support for the Court of Civil Appeals' notion that for a claim seeking to vindicate a constitutional right the "amount involved" inherently exceeds $50,000. Coprich did not involve any constitutional-rights claims; Coprich sought to set aside a deed to real property based on his alleged lack of competence to acquiesce to the transaction. Thus, Coprich had nothing to say about the monetary value of a constitutional-rights claim.

We are also perplexed as to why the Court of Civil Appeals automatically assumed that that the "amount involved" for a constitutional-rights claim would exceed $50,000 in value. Clearly, the prisoners did not make such an assumption because they filed their appeal in the Court of Civil Appeals. Moreover, to the extent that the Court of Civil Appeals may have been under the impression that the prisoners' claims were worth more than $50,000 because constitutional rights are of inestimable value, the holding is contradictory because it places a monetary value on the claimed right while intimating that its value is beyond measure.[4] As the United States Supreme Court has

---

[4]That conclusion is also contrary to previous precedents of the Court of Civil Appeals. See, e.g., Salter v. State, 971 So. 2d 31 (Ala. Civ. App. 2007) (determining that the Community Notification Act, § 15-20-20 et seq., Ala. Code 1975 (repealed), did not violate the United States Constitution's prohibition on ex post facto laws or the Double Jeopardy

explained, if a monetary value is to be placed on the deprivation of a constitutional right, it must be for an actual injury, not based on a "subjective perception of the importance of constitutional rights as an abstract matter." <u>Memphis Cmty. Sch. Dist. v. Stachura</u>, 477 U.S. 299, 308 (1986). See also <u>Carey v. Piphus</u>, 435 U.S. 247, 254 (1978) ("Rights, constitutional and otherwise, do not exist in a vacuum. Their purpose is to protect persons from injuries to particular interests, and their contours are shaped by the interests they protect."). Thus, we find no legal support for the Court of Civil Appeals' basis for transferring this appeal to this Court.

---

Clause of the Fifth Amendment). The Court of Civil Appeals also has considered challenges to the constitutionality of Alabama statutes in cases in which a plaintiff has sought damages within the jurisdictional threshold stated in § 12-3-10. See, e.g., <u>Juneman Elec., Inc. v. Cross</u>, 414 So. 2d 108, 110 (Ala. Civ. App. 1982) (concluding that § 12-16-8, Ala. Code 1975, which excuses employees from employment for jury service but entitles employees to their usual compensation for such employment, did not violate certain provisions of the United States Constitution or the Alabama Constitution); <u>McPherson v. Gross</u>, 399 So. 2d 301, 302 (Ala. Civ. App. 1981) (concluding that § 3-5-3(a), Ala. Code 1975, did not "violate[] the due process and equal protection provisions of the United States Constitution and the Alabama Constitution"). Thus, the Court of Civil Appeals has not previously concluded that the assertion of a constitutional-rights claim in itself places an appeal beyond the jurisdictional "amount involved" provided in § 12-3-10.

15

One of the attorney general's arguments for transfer of this appeal from the Court of Civil Appeals was that the "amount involved" in this case exceeds $50,000 because "the relief [the prisoners] seek impacts -- according to the allegations in the complaint -- a program generating millions of dollars in revenue." Motion to transfer, p. 6. That argument referred to the following allegation in the prisoners' complaint:

> "164. Incarcerated workers in ADOC custody who work for ACI have generated over $3 million in annual profit for the State of Alabama, as of September 2023. And, according to ADOC's own reporting, work release generated $12,942,048.13 for the State of Alabama between October 2022 to September 2023. These figures do not include the many millions of dollars that ADOC saves by assigning incarcerated workers to carry out a wide variety of essential tasks inside prison walls."

(Footnotes omitted.) In making that argument, the attorney general apparently sought to draw a parallel between this Court's examination of the record in <u>Coprich</u> to ascertain the value of the property at issue in that case and the prisoners' allegation of the value of the State's work-release programs.

However, that argument is misplaced because, while Coprich sought to void the property transaction between himself and Jones, the prisoners do not seek termination of the State's work-release programs.

16

Indeed, as the attorney general prominently notes in his brief on the merits, "[t]he relief [the prisoners] seek is not an injunction ordering the State to shut down the work release and community work programs. To the contrary, the [prisoners] want to live in a community-based facility and enjoy the privileges that come with work release." Appellees' brief, pp. 1-2. Thus, the purported value of the State's work-release programs is not the "amount involved" in this case the way the value of the real property formed the basis of the "amount involved" in <u>Coprich</u>.

In the present case, the prisoners appealed a judgment of the Montgomery Circuit Court dismissing their complaint to the Court of Civil Appeals. In doing so, the prisoners implicitly indicated that the "amount involved" in this case does not exceed $50,000. Nothing in the record on appeal indicates that the "amount involved" clearly exceeds $50,000 for the purposes of § 12-3-10.

Indeed, the attorney general's primary argument in his motion to transfer conceded that the prisoners' claims did not clearly exceed $50,000 in value. The attorney general contended that the prisoners' "case lacks a quantifiable 'amount involved' and thus does not trigger [the Court of Civil Appeals'] limited appellate jurisdiction." Motion to

transfer, p. 2. But that argument makes an unnecessary assumption about the text of § 12-3-10. In cases in which there is no recovery by a party, "the amount claimed shall be deemed to be the amount involved." § 12-3-10. The attorney general's interpretation of § 12-3-10 essentially assumes that a plaintiff's complaint must specify the amount involved for the Court of Civil Appeals to have appellate jurisdiction of a case in which there is no recovery. But that is contrary to Coprich, which expressly held that, "in cases in which the only requested relief is equitable and 'the amount involved' appears to be less than $50,000, the Court of Civil Appeals has 'exclusive appellate jurisdiction.'"[5] 406 So. 3d at 63.

---

[5]We also note that the attorney general's assumption that a plaintiff's complaint must specify an amount involved to invoke the appellate jurisdiction of the Court of Civil Appeals particularly makes no sense in a case like this one in which the prisoners have claimed their constitutional rights have been violated. The United States Supreme Court has recognized that

"[c]ommon-law courts traditionally have vindicated deprivations of certain 'absolute' rights that are not shown to have caused actual injury through the award of a nominal sum of money. By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed …."

Carey v. Piphus, 435 U.S. 247, 266 (1978) (footnote omitted).

As in <u>Coprich</u>, the "amount involved" in this case does not clearly exceed $50,000. This Court cannot presume that it has jurisdiction over a case that has already invoked the appellate jurisdiction of the Court of Civil Appeals pursuant to § 12-3-10. Likewise, the Court of Civil Appeals cannot transfer an appeal to this Court under the guise of § 12-3-10 when the record lacks a sufficient demonstration that the appeal does not fall within the appellate jurisdiction of the Court of Civil Appeals. Moreover, accepting this transfer would contradict the prisoners' representations that jurisdiction over the appeal appropriately lies with the Court of Civil Appeals. In light of <u>Coprich</u>, we are not inclined to take such extraordinary action based on speculation and conjecture.

---

Under the attorney general's argument, the prisoners could have invoked the appellate jurisdiction of the Court of Civil Appeals by asserting their constitutional-rights claims and including a request for nominal damages to vindicate those claims, but the omission of a request for nominal damages means that the appeal must be entertained by this Court. Cf. <u>Williams v. Citizens Bank of Guntersville</u>, 350 So. 2d 1031, 1033 (Ala. 1977) (plurality opinion) (holding that nominal "damages are 'a small sum fixed, without regard to the extent of harm done, by the custom of the jurisdiction in which the action is brought.' <u>Corbin on Contracts</u>, Vol. 5, § 1001, p. 29-30."). In other words, according to the attorney general, § 12-3-10 dictates that appeals involving constitutional claims that seek a small amount of damages belong in the Court of Civil Appeals, but appeals involving constitutional claims that seek no damages belong in this Court. We disagree with that interpretation.

The attorney general's final argument to the Court of Civil Appeals in his motion to transfer the appeal asserted that even if the Court of Civil Appeals did have jurisdiction over the appeal, that court should transfer the appeal to this Court because the case involves a "constitutional matter of first impression." Motion to transfer, p. 7. In support of the argument that the Court of Civil Appeals had the power to transfer the appeal to this Court on that ground, the attorney general cited § 12-2-7(6)a. and b., Ala. Code 1975.[6] The attorney general explained:

---

[6]Section 12-2-7(6)a. and b. provide:

"The Supreme Court shall have authority:

"....

"(6) To transfer to the Court of Civil Appeals, for determination by that court, any civil case appealed to the Supreme Court and within the appellate jurisdiction of the Supreme Court, except the following:

"a. A case that the Supreme Court determines presents a substantial question of federal or state constitutional law.

"b. A case that the Supreme Court determines involves a novel legal question, the resolution of which will have significant statewide impact."

20

"The only claim in this case presents a question of state constitutional law: whether ADOC's work programs constitute slavery or involuntary servitude in violation of § 32 of the Alabama Constitution. That question is substantial because it requires determining § 32's ordinary meaning, which (as far as [Governor Ivey and Commissioner Hamm] are aware) no Alabama court has analyzed in a published opinion. The constitutionality of ADOC's work programs under § 32 is thus an issue of first impression. And the resolution of this question will have a significant statewide impact given the thousands of inmates throughout the State who participate in the programs. Lastly, it is in the interest of judicial economy for the Alabama Supreme Court to decide this appeal of an important constitutional matter of first impression in the first instance."

Motion to transfer, pp. 7-8 (footnote and record citation omitted). The attorney general reasoned that, "[i]f the presence of such conditions bars a transfer from the Supreme Court [under § 12-2-7(6)a. and b.], it stands to reason that they would also support a transfer to the Supreme Court." Id. at p. 7.

In response, the prisoners argued that

"[s]ection 12-2-7(6) concerns exceptions to the Supreme Court's authority to transfer or 'deflect' cases to the Court of Civil Appeals. But [the attorney general's] attempt to flip this provision to create a standard about transfers from the Court of Civil Appeals to the Supreme Court is not supported by the statutory text or case law."

Prisoners' response to motion to transfer, p. 7. The prisoners noted that the attorney general's only citation to authority for his interpretation of

21

§ 12-2-7(6) was to <u>LEAD Education Foundation v. Alabama Education Ass'n</u>, 290 So. 3d 778 (Ala. 2019), but the appeal transfer in that case occurred under the authority of § 12-3-15, Ala. Code 1975,[7] not under § 12-2-7(6)a. or b. See <u>LEAD Educ. Found.</u>, 290 So. 3d at 784 n.7 (stating that "[b]ecause of the need for an expeditious resolution of the substantive issues by this Court, the consolidated appeals were properly transferred to this Court pursuant to § 12-3-15, Ala. Code 1975"). The prisoners also argued that the merits of their claims were not before the appellate court because the circuit court had dismissed the prisoners' complaint on the grounds of standing and sovereign immunity, not on the ground that the prisoners had failed to state a claim under § 32 of the Alabama Constitution, and so, they said, a constitutional issue of first

---

[7]Section 12-3-15 provides, in relevant part:

"When it is deemed advisable or necessary for the proper dispatch of the business of the Alabama Court of Civil Appeals, the Chief Justice of the Supreme Court, with the advice of the Supreme Court, and the presiding judge of the Court of Civil Appeals, may in writing designate any case in the Alabama Court of Civil Appeals to be transferred to the Supreme Court for a hearing and final determination by that court."

impression was not before the appellate court. Accordingly, the prisoners argued, a discretionary transfer was not warranted.

We agree with the prisoners. Section 12-2-7(6) places limits on this Court's authority to transfer cases to the Court of Civil Appeals; it does not empower the Court of Civil Appeals to transfer cases to this Court under the grounds stated. Importantly, § 12-2-7(6)a. and b. leave it up to this Court, not the Court of Civil Appeals, to determine whether a case presents a substantial question of federal or state constitutional law or if it involves a novel legal question that will have a significant statewide impact. Moreover, the prisoners are correct that the issues upon which the circuit court granted the motion to dismiss the prisoners' complaint -- § 14 immunity and standing -- are "jurisdictional" issues that are not "novel questions of law." Prisoners' response to motion to transfer, p. 8. Therefore, a transfer of the appeal from the Court of Civil Appeals to this Court based on § 12-2-7(6) would not have been permissible.

As we recounted in the rendition of facts, it is true that, in addition to jurisdictional grounds, the attorney general also argued in the motion to dismiss that the prisoners' "allegations fail to state a claim under § 32 of the Constitution." It is also true that, aside from exceptions not

relevant here, "this Court will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court." Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So. 2d 1013, 1020 (Ala. 2003). But the Court of Civil Appeals did not consult with this Court to seek a transfer of this case under § 12-3-15 based on any perceived need to evaluate the prisoners' constitutional claims in an expedited manner or for any other valid reason.[8] The Court of Civil Appeals transferred the appeal based on its assessment that "the 'amount involved' in this case, which seeks to vindicate the [prisoners'] constitutional rights, exceeds $50,000" and that, "[a]s a result, this court lacks jurisdiction over the [prisoners'] appeal. See § 12-3-10, Ala. Code

_____

[8]See, e.g., A.G. v. Ka.G., 114 So. 3d 24, 24 n.1 (Ala. 2012) (appeal transferred by request of the Court of Civil Appeals pursuant to § 12-3-15 "because a member of that court was related to a party involved in the case"); Cochran v. Cochran, 5 So. 3d 1220, 1226 n.1 (Ala. 2008) (appeal transferred pursuant to § 12-3-15 because one of the parties was serving as a staff attorney for a judge on the Court of Civil Appeals); Fort James Operating Co. v. Stephens, 996 So. 2d 833, 834 n.1 (Ala. 2008) (appeal transferred pursuant to § 12-3-15 because, before assuming office, one of the judges on the Court of Civil Appeals served as counsel for one of the parties while the case was pending in the trial court).

24

1975." For the reasons stated in this opinion, we cannot accept the transfer on that basis.

### III. Conclusion

For the reasons stated in this opinion, § 12-3-10 does not deprive the Court of Civil Appeals of jurisdiction over this appeal. Accordingly, we transfer the appeal back to the Court of Civil Appeals.

APPEAL TRANSFERRED.

Wise, Bryan, Sellers, and Cook, JJ., concur.

Mendheim, J., concurs specially, with opinion.

Shaw, J., dissents, with opinion, which Stewart, C.J., and McCool, J., join.

Lewis, J., recuses himself.

MENDHEIM, Justice (concurring specially).

I agree with the reasoning and the result in the main opinion. I write separately because I believe that a common misreading of § 12-3-10, Ala. Code 1975, has led to misconceptions about the appellate jurisdiction of the Court of Civil Appeals and of the Supreme Court. A proper understanding of appellate jurisdiction in the courts of appeals and the Alabama Supreme Court requires an understanding of the history of Alabama's appellate courts, taking a holistic view of the Judicial Article of the Alabama Constitution, and carefully reading the statutes on appellate jurisdiction. I believe that such scrutiny leads to the inescapable conclusion that the appellate jurisdiction of the Court of Civil Appeals is broader than it has ordinarily been understood to be, and it certainly encompasses the appeal in this case.

Section 12-3-10 states:

"The Court of Civil Appeals shall have exclusive appellate jurisdiction of all civil cases where the amount involved, exclusive of interest and costs, does not exceed $50,000, all appeals from administrative agencies other than the Alabama Public Service Commission, all appeals in workers' compensation cases, all appeals in domestic relations cases, including annulment, divorce, adoption, and child custody cases and all extraordinary writs arising from appeals in said cases. Where there is a recovery in the court below of any amount other than costs, the amount of such recovery

26

shall be deemed to be the amount involved; otherwise, the amount claimed shall be deemed to be the amount involved; except, that in actions of detinue the alternate value of the property as found by the court or jury shall be deemed to be the amount involved."

Coprich v. Jones, 406 So. 3d 58 (Ala. 2024), explained that for many years it had been assumed that the language of § 12-3-10 required appeals from decisions in cases in which parties sought solely equitable relief to be heard by the Alabama Supreme Court. Coprich rectified that misunderstanding, demonstrating that the Court of Civil Appeals has appellate jurisdiction in all civil cases in which the amount involved does not clearly exceed $50,000 -- including cases that involve solely equitable relief.

Despite the course correction Coprich signaled, there remains a fundamental misunderstanding that the phrase "[t]he Court of Civil Appeals shall have exclusive appellate jurisdiction of all civil cases" means that the appellate jurisdiction of the Court of Civil Appeals is limited to the types of cases listed in § 12-3-10. For example, in Ex parte R.B.Z., 725 So. 2d 257, 260 (Ala. 1997), this Court mistakenly stated:

"The only way the Court of Civil Appeals may take jurisdiction over a matter not expressly assigned to that court by § 12-3-10 is by a transfer pursuant to § 12-2-7(6), a transfer commonly called 'deflection.' The plaintiffs incorrectly argue

that the statute permitting deflection gives this Court and the Court of Civil Appeals concurrent jurisdiction over all matters not covered by § 12-3-10. <u>Deflection is provided by § 12-2-7(6), which allows this Court to grant the Court of Civil Appeals jurisdiction over a case that this Court deflects to that court, provided the case does not fall into one of the exceptions listed. The Court of Civil Appeals does not have jurisdiction over an appeal outside the scope of § 12-3-10 unless and until this Court transfers -- deflects -- that appeal to it</u>."

(Emphasis added.) The foregoing passage was not necessary to the result reached in R.B.Z. because, with respect to § 12-3-10, all that mattered in R.B.Z. was the fact that the plaintiffs had claimed damages in excess of $50,000, which, this Court determined, should have deprived the Court of Civil Appeals of jurisdiction over the plaintiffs' initial appeal to that court. In other words, the R.B.Z. Court's pronouncement that the Court of Civil Appeals possesses appellate jurisdiction of only the types of cases listed in § 12-3-10 or cases "deflected" to it under § 12-2-7(6), Ala. Code 1975, was dictum. That passage nonetheless illustrates a common -- but mistaken -- understanding of what § 12-3-10 means with respect to the appellate jurisdiction of the Court of Civil Appeals.

In reality, the correct reading of § 12-3-10 strips the Supreme Court of appellate jurisdiction of the types of cases listed, but the appellate jurisdiction of the Court of Civil Appeals is not limited to the types of

cases listed in § 12-3-10. That point is most readily and easily demonstrated by perusing statutes other than § 12-3-10 and rules promulgated by the Alabama Supreme Court. For example, § 12-12-71, Ala. Code 1975, provides, in part: "Except as provided in Section 12-12-72[, Ala. Code 1975,] and in subsection (e) of Section 12-15-120, [Ala. Code 1975,] all appeals from final judgments of the district court shall be to the circuit court for trial de novo." Section 12-12-72, Ala. Code 1975, then provides that, under certain circumstances, appeals from district courts may go directly to the Court of Civil Appeals or to the Court of Criminal Appeals.[9] Section 36-19-13, Ala. Code 1975, provides that an owner or occupant of a building who is "aggrieved" by an order of a fire marshal that requires an owner or occupant to remedy any fire-hazard

---

[9]Section 12-12-72 provides:

"Appeals shall be directly to the appropriate appellate court if:

"(1) An adequate record or stipulation of facts is available and the right to a jury trial is waived by all parties entitled thereto; or

"(2) The parties stipulate that only questions of law are involved and the district court certifies the questions."

condition may appeal a circuit court's affirmance of such an order to the Court of Civil Appeals.[10] Appeals of circuit-court judgments in expedited quiet-title and foreclosure actions initiated by Class 2 and Class 3 municipalities against parcels of tax-sale property within their local municipal limits may be appealed to the Court of Civil Appeals without regard to the "amount involved." See Ala. Code 1975, §§ 11-70-9 and 11-70A-9. Section § 22-52-15, Ala. Code 1975, provides that an appeal from a judgment involuntarily committing a person to the custody of the Alabama Department of Mental Health must be appealed to the Court of Civil Appeals when "the probate judge who granted the petition was learned in the law." Section 22-11A-36, Ala. Code 1975, provides the same requirement for appealing an order of a probate judge "learned in law" that grants a petition seeking to commit a person to the custody of the Alabama Department of Public Health.

Perhaps the most intriguing statutory example is § 23-4-5, Ala. Code 1975, which provides that "[a]ny party affected by the vacation of a

---

[10]Before the adoption of the Alabama Code of 1975, review of a circuit court's order concerning a fire marshal's order by the Court of Appeals and, subsequently, the Court of Civil Appeals, was available only through a petition for a writ of certiorari. See Title 55, § 41, Ala. Code 1940 (1958 Recomp.).

street, alley, or highway" by a county or city is entitled to appeal the vacation to circuit court, and the circuit court's judgment entered in its de novo proceeding may be appealed "to the Court of Civil Appeals or the Alabama Supreme Court in accordance with the Alabama Rules of Appellate Procedure." In other words, § 23-4-5 allows an appellant to choose the appellate court in which the appellant desires to file the appeal, with no mention of the "amount involved" being a factor for appellate jurisdiction of such an appeal. Compare City of Mobile v. Pinto Island Land Co., 5 So. 3d 1248 (Ala. Civ. App. 2007), with Barry v. The D.M. Drennen & Emma Houston Drennen & Drennen Mem'l Tr. of Saint Mary's Church, 982 So. 2d 478 (Ala. 2007).

The foregoing listing of statutes is sufficient in itself to invalidate R.B.Z.'s statement that "[t]he Court of Civil Appeals does not have jurisdiction of an appeal outside the scope of § 12-3-10 unless and until this Court transfers -- deflects -- that appeal to it." 725 So. 2d at 260. But what is even more telling about the nature of appellate jurisdiction in Alabama is the fact that the Alabama Supreme Court has the power to assign appellate jurisdiction through the promulgation of rules. A prime example is Rule 28, Ala. R. Juv. P., which provides for where appeals of

31

decisions of the juvenile courts should be filed. Rule 28(A) explains when an appeal may go directly to an appellate court -- either the Court of Criminal Appeals or the Court of Civil Appeals -- while Rule 28(B) explains when an appeal should be directed to a circuit court for a trial de novo. Most pertinent here, Rule 28(A)(2)(b) directs appeals in certain types of juvenile cases -- particularly dependency and termination-of-parental rights cases -- to the Court of Civil Appeals even though such cases are not expressly mentioned in § 12-3-10 as being within the appellate jurisdiction of the Court of Civil Appeals. Similarly, Rule 28(A)(2)(a) dictates that, in proceedings that involve a child alleged to be delinquent or that involve an order transferring a child to adult court for criminal prosecution, "the appropriate appellate court" is the Court of Criminal Appeals even though § 12-3-9, Ala. Code 1975, does not expressly mention such cases.[11]

It is true that § 12-15-601, Ala. Code 1975, expressly empowers this Court to promulgate a rule like Rule 28, stating:

---

[11]Section 12-3-9 provides: "The Court of Criminal Appeals shall have exclusive appellate jurisdiction of all misdemeanors, including the violation of town and city ordinances, habeas corpus and all felonies, including all post conviction writs in criminal cases."

"A party, including the state or any subdivision of the state, has the right to appeal a judgment or order from any juvenile court proceeding pursuant to this chapter [i.e., Title 12, Chapter 15, Ala. Code 1975]. The procedure for appealing these cases shall be pursuant to rules of procedure adopted by the Supreme Court of Alabama. All appeals from juvenile court proceedings pursuant to this chapter shall take precedence over all other business of the court to which the appeal is taken."

(Emphasis added.) But what is interesting about § 12-15-601 for purposes of appellate jurisdiction is that the statute does not provide for appellate jurisdiction of juvenile cases; it merely provides that a party has a right to appeal in such cases, and it leaves all procedures for such appeals -- including the direction of appellate jurisdiction -- to the Alabama Supreme Court. In other words, § 12-15-601 assumes that the Court of Criminal Appeals and the Court of Civil Appeals already have appellate jurisdiction over juvenile cases even though such cases are not listed in §§ 12-3-9 or § 12-3-10.

Rule 28 is hardly the only rule promulgated by the Supreme Court that directs appellate jurisdiction, albeit such direction usually is dictated by expanding the right to appeal from various forms of judgment. Section 12-22-2, Ala. Code 1975, declares: "From any final judgment of the circuit court or probate court, an appeal lies to the

33

appropriate appellate court as a matter of right by either party, or their personal representatives, within the time and in the manner prescribed by the Alabama Rules of Appellate Procedure." Concerning § 12-22-2, this Court has explained:

> "This statute embodies our time-honored rule that a final judgment is an essential precondition for appealing to this Court. <u>Cates v. Bush</u>, 293 Ala. 535, 307 So. 2d 6, 8 (1975). Generally, the absence of a final order precludes us from exercising our [appellate] jurisdiction. <u>Id.</u> However, this rule is not absolute. For instance, § 12-22-2 does not prohibit this Court from exercising its rule-making authority to allow appeals from certain interlocutory orders. See, e.g., Rule 4(a)(1) and Rule 5 A[la.] R. App. P."

<u>John Crane-Houdaille, Inc. v. Lucas</u>, 534 So. 2d 1070, 1073-74 (Ala. 1988).

Indeed, as the <u>Lucas</u> Court observed, Rule 4(a)(1)(A)-(C), Ala. R. App. P., permits appeals of certain interlocutory orders. Rule 5(a), Ala. R. App. P., permits parties to petition for "appeal from an interlocutory order in civil actions under limited circumstances." Unmentioned by the <u>Lucas</u> Court because it was adopted in 2001, but along similar lines, Rule 4(d), Ala. R. App. P., permits the immediate appeal of an order granting or denying a motion to compel arbitration. Rule 54(b), Ala. R. Civ. P., "confers appellate jurisdiction over an order of judgment only where the

34

trial court 'has completely disposed of one of a number of claims, or one of multiple parties.'" Tanner v. Alabama Power Co., 617 So. 2d 656, 656 (Ala. 1993) (quoting Committee Comments on 1973 Adoption of Rule 54, subdivision (b)) (emphasis omitted). As those committee comments to Rule 54(b) further observe: "[P]rior to the adoption of these rules it might not have been possible to enter final judgment in such a situation until all the claims, or the rights and liabilities of all the parties, had been adjudicated." In other words, the courts of appeals and this Court could not exercise appellate jurisdiction over such judgments before the adoption of Rule 54(b).

At first blush, the Lucas Court's statement that "§ 12-22-2 does not prohibit this Court from exercising its rule-making authority to allow appeals from certain interlocutory orders" may seem extraordinary because, if a statute declares that final judgments are appealable, why should it be assumed that the Supreme Court possesses the inherent authority to add to that statutory declaration? The answer lies in the authority that belongs to the Supreme Court, which was robust from its inception, but reached a new level with the adoption of the new Judicial Article in 1973.

Alabama's first constitution, the Constitution of 1819, provided:

"§ 1. <u>The judicial power of this state shall be vested in one supreme court, circuit courts</u> to be held in each county in the state, <u>and such inferior courts of law and equity</u>, to consist of not more than five members, as the general assembly may, from time to time, direct, ordain, and establish.

"§ 2. <u>The supreme court</u>, except in cases otherwise directed by this constitution, <u>shall have appellate jurisdiction only</u>, which shall be co-extensive with the state, <u>under such restrictions and regulations, not repugnant to this constitution, as may, from time to time, be prescribed by law</u>; Provided, that <u>the supreme court shall have power</u> to issue writs of injunction, mandamus, quo-warranto, habeas corpus, and such other remedial and original writs, <u>as may be necessary to give it a general superintendence and control of inferior jurisdictions</u>."

Art. V, §§ 1 & 2, Ala. Const. 1819 (emphasis, other than on "Provided," added). Thus, since statehood, the Alabama Supreme Court possessed "[t]he judicial power," its primary jurisdiction was appellate, but it also possessed "general superintendence and control of inferior jurisdictions," i.e., control of the inferior courts of the state. As Article V, § 2, indicated, the Supreme Court's appellate jurisdiction could be restricted by law. "It is believed that under the authority here given, this Court could not entertain an appeal from an inferior jurisdiction in any case until the Legislature had provided the mode of exercising such jurisdiction." <u>Humphrey v. State</u>, Minor 64, 64 (1822). In other words, the Supreme

36

Court could <u>exercise</u> its appellate jurisdiction only once a right of appeal had been provided.[12]

Those same principles remained in the Alabama Constitution adopted in 1901. Article VI, § 139, of the 1901 Constitution was similar to Article V, § 1, of the 1819 Constitution in that it provided, in relevant part, that "[t]he judicial power of the state shall be vested in … a supreme court, circuit courts, chancery courts, courts of probate, [and] such courts of law and equity inferior to the supreme court …." Likewise, Article VI, § 140, of the 1901 Constitution was similar to Article V, § 2, of the 1819 Constitution, except that it anticipated the potential future need for intermediate appellate courts.

---

[12]

"A party has no vested right to an appeal other than what the legislature may care to confer. 'An appeal is taken to an appellate court, not as a vested right, but by the grace of a statute … and must be perfected and prosecuted pursuant to the time and manner prescribed ….' <u>Lewis v. Martin</u>, 210 Ala. 401, 409, 98 So. 635, 642 [(1923)]. … '… the Legislature can limit, restrict, or abolish the right of appeal so long as it does not attempt to restrict the right of this court to exercise its superintendence and control over inferior tribunals under section 140 of the Constitution.' <u>Ex parte Louisville & N. R. Co.</u>, 214 Ala. 489, 108 So. 379, 380 [(1926)] …."

<u>Ex parte Tsimpides</u>, 272 Ala. 430, 434, 131 So. 2d 873, 876 (1961).

"Except as otherwise directed in this Constitution, the supreme court shall have appellate jurisdiction only, which shall be coextensive with the state, under such restrictions and regulations, not repugnant to this Constitution, as may from time to time be prescribed by law, except where jurisdiction over appeals is vested in some inferior court, and made final therein; provided, that the supreme court shall have power to issue writs of injunction, habeas corpus, quo warranto, and such other remedial and original writs as may be necessary to give it a general superintendence and control of inferior jurisdictions."

Art. VI, § 140, Ala. Const. 1901 (emphasis added). As before, the Supreme Court's primary jurisdiction was appellate, and that jurisdiction could be restricted by law, but the new constitution provided for the possible creation of other appellate courts to which some cases first must be appealed. However, the Supreme Court still maintained "a general superintendence and control of inferior jurisdictions." Id.

As Coprich explained, the existence of an intermediate appellate court became a reality 10 years later.

"The Court of Appeals was established by the Legislature in 1911 by General Act No. 121. Section 2 of that Act provided:

"'Sec. 2. Said court, except as to actions involving the title to or possession of lands and except as herein otherwise provided, shall have final appellate jurisdiction, co-extensive with the State of all suits at law where the amount involved, exclusive of interests and costs does not exceed the sum of one thousand dollars, of all

38

> misdemeanors, including the violation of town and
> city ordinances, bastardy, habeas corpus and all
> felonies, where the punishment has been fixed at
> twenty years or under. Where there is a recovery
> in the court below of any amount other than costs,
> the amount of such recovery shall be deemed to be
> the amount involved, otherwise the amount
> claimed shall be deemed to be the amount
> involved, except that in actions of detinue the
> alternative value of the property as found by the
> court or jury shall be deemed to be the amount
> involved....'

"Ala. Gen. Acts 1911, Act No. 121, § 2 ...."

406 So. 3d at 63 (emphasis altered).

As § 2 of General Act No. 121 explained, the Court of Appeals had "final appellate jurisdiction" in criminal cases and in civil cases "at law" when the "amount involved" did not exceed $1,000. At first, there was some confusion as to what "final appellate jurisdiction" meant in the context of Article VI, § 140, of the 1901 Constitution and General Act No. 121. That is, did it mean that the Supreme Court could not review -- even by a petition for a writ of certiorari -- a case that was appealed to the Court of Appeals? This Court addressed that question in <u>Williams v. Louisville & Nashville R.R.</u>, 176 Ala. 631, 633-34, 58 So. 315, 316 (1912), explaining:

> "The Constitution authorizes the creation of an inferior appellate court with final jurisdiction, and, <u>when said court is given final jurisdiction, this court is shorn of appellate jurisdiction, but the jurisdiction so made is subject to the superintendence and control of the Supreme Court by the express terms of the Constitution</u>. The Legislature did not intend to establish an appellate court with co-ordinate jurisdiction and powers with the Supreme Court, and could not have done so, under the Constitution, had it so intended."

(Emphasis added.) Thus, because "said final jurisdiction must of necessity be subject to the general control and superintendence of the Supreme Court," a decision of the Court of Appeals was subject to Supreme Court review via a petition for a writ of certiorari. 176 Ala. at 637, 58 So. at 317. In other words, "final appellate jurisdiction" meant that appellate jurisdiction in certain cases belonged to the Court of Appeals rather than to the Supreme Court -- which ordinarily would have had appellate jurisdiction because it was the original and constitutionally established appellate court -- but being "shorn of appellate jurisdiction" did not mean that the Supreme Court lacked oversight of the decisions by the Court of Appeals.

A similar confusion arose as to whether the Supreme Court's "general superintendence and control of inferior jurisdictions" meant that the Supreme Court possessed the power to make rules for inferior courts

and, if so, what relation those rules had to statutes pertaining to the practice and procedure of the courts. This Court addressed that question at length in Ex parte Foshee, 246 Ala. 604, 21 So. 2d 827 (1945). The Foshee Court concluded that "[o]ur Constitution, section 140, gives this Court superintendence and control of inferior jurisdictions, and that includes by implication the power to make rules, and it is therefore sometimes said to be an inherent power." 246 Ala. at 606, 21 So. 2d at 829. However, the Foshee Court also reasoned that because the Legislature "by express constitutional grant" had the "power to make rules and regulations for all the courts," the Legislature's power was "superior to that of this Court inferred merely from section 140." 246 Ala. at 607, 21 So. 2d at 829.

It is with the foregoing historical backdrop that the people of this state adopted the new Judicial Article in 1973, intending to establish the judicial branch on a firmer foundation than the previous Judicial Article had provided.

> "'On December 18, 1973, the people of this state overwhelmingly approved a fundamental reorganization of the state's judicial system. By a vote of almost two-to-one, the people approved a constitutional amendment (new judicial article) which was proclaimed on December 27, 1973 as

41

Amendment No. 328 to the Alabama Constitution, 1901, and which laid to rest a system that served well in the 18th and 19th centuries, but which was strained by the economic, political and social conditions of the 20th century. On the old foundations, a modern judicial system has been erected, designed to meet the needs of the people of this state in the last quarter of this century, and to continue to be responsive to the kaleidoscopic challenges of modern-day life on into the 21st century.

"'The citizens of this state now demand a modern, responsive, effective judicial system which does not cling to the ideas and concepts of a more pristine period when problems of judicial administration were slight. For in today's complex society, just as procedure is the handmaid of justice, so too, judicial administration is the handmaid of an effective judicial system. The independence of the judiciary to do those things judicial cannot realistically be separated from the need for administrative independence if the mandate of the people for a more effective system of justice is to be fulfilled.

"'One can not escape some of the underlying themes of the new constitutional framework for courts when a comparison is made between the provisions of the old judicial article and the new judicial article. One of the underlying themes is a constitutional mandate that the judicial branch exercise more administrative independence.

"'Another underlying theme is that the Supreme Court should make the initial determination of the operating rules for the judicial system, subject only to specific restraints,

> in order to ensure a more effective businesslike operation of the entire court system. ...'

"Morgan County Comm'n v. Powell, 292 Ala. 300, 325-26, 293 So. 2d 830, 853-54 (1974) (Heflin, C.J., dissenting).

> "....

> "The 'old judicial article' comprised Art. VI, §§ 139-172, Constitution of Alabama 1901. The 'new judicial article' repealed the old judicial article and replaced it with an entirely new Article VI."

Schoenvogel ex rel. Schoenvogel v. Venator Grp. Retail, Inc., 895 So. 2d 225, 230-31 (Ala. 2004).

The new Judicial Article begins by vesting the judicial power in a Unified Judicial System and by enunciating what courts compose that system.

> "(a) Except as otherwise provided by this Constitution, the judicial power of the state shall be vested exclusively in a unified judicial system which shall consist of a supreme court, a court of criminal appeals, a court of civil appeals, a trial court of general jurisdiction known as the circuit court, a trial court of limited jurisdiction known as the district court, a probate court and such municipal courts as may be provided by law."

Article VI, § 139(a), Ala. Const. 2022 (emphasis added).[13]

---

[13]The vesting of the judicial power in the listed courts is repeated, essentially verbatim, in § 12-1-2, Ala. Code 1975.

43

Under § 139(a), all courts listed possess "the judicial power of the state," the circuit courts possess "general jurisdiction," and the district courts expressly possess "limited jurisdiction." Moreover, the courts of appeal, which originally were creatures of statute, became -- like the Supreme Court -- constitutional appellate courts. Compare <u>Coprich</u>, 406 So. 3d at 65 ("[T]he Court of Appeals … was replaced by the Court of Civil Appeals and the Court of Criminal Appeals. In 1969 the Legislature approved Act No. 987, which created both of the current intermediate appellate courts, provided for the jurisdiction of each of those courts, and provided for the transfer of cases between those courts and the Alabama Supreme Court.").

The new Article VI, § 140, increased the scope of the Supreme Court's power and jurisdiction in comparison to the old § 140.

> "(a) <u>The supreme court shall be the highest court of the state</u> and shall consist of one chief justice and such number of associate justices as may be prescribed by law.
>
> "(b) The supreme court shall have original jurisdiction (1) of cases and controversies as provided by this Constitution, (2) to issue such remedial writs or orders as may be necessary <u>to give it general supervision and control of courts of inferior jurisdiction</u>, and (3) to answer questions of state law certified by a court of the United States.

"(c) The supreme court shall have <u>such appellate jurisdiction as may be provided by law</u>."

Art. VI, § 140, Ala. Const. 2022 (emphasis added).

Section 140(b) charges the Alabama Supreme Court with supervision over the courts of the Unified Judicial System. However, unlike the old Judicial Article, the new Judicial Article buttresses the Supreme Court's "general supervision and control" of inferior courts with an express power to make rules for the Unified Judicial System.

"The supreme court shall make and promulgate rules governing the administration of all courts and rules governing practice and procedure in all courts; provided, however, that such rules shall not abridge, enlarge or modify the substantive right of any party nor affect the jurisdiction of circuit and district courts or venue of actions therein; and provided, further, that the right of trial by jury as at common law and declared by section 11 of the Constitution of Alabama 1901 shall be preserved to the parties inviolate. These rules may be changed by a general act of statewide application."

Art. VI, § 150, Ala. Const. 2022. Thus, the new Judicial Article made explicit what the <u>Foshee</u> Court labeled as "an inherent power."[14] 246 Ala. at 606, 21 So. 2d at 829.

---

[14]Indeed, in <u>Schoenvogel</u>, this Court noted that "[b]ecause [what is now Article VI, § 150,] explicitly confers on this Court rulemaking authority, and, in fact, mandates that this Court exercise that authority, some of the rationale of <u>Ex parte Foshee</u> … is undercut." 895 So. 2d at 233. The <u>Schoenvogel</u> Court went on to observe that "[a] legislative

Article VI, § 140(c), simplified the old § 140's statement concerning the Supreme Court's appellate jurisdiction by plainly stating that "[t]he supreme court shall have such appellate jurisdiction as may be provided by law." This subsection removed the confusing language in the old § 140 -- discussed in Williams -- about appellate jurisdiction sometimes being "vested in some inferior court, and made final therein." Art. VI, § 140, Ala. Const. 1901. Section 140(c) also hearkened back to the language in the Constitution of 1819, acknowledging that the Supreme Court, as the original state appellate court, had appellate jurisdiction, but that such "appellate jurisdiction" could be exercised only when a right of appeal had been granted and that it was subject to statutory restriction and regulation. That meaning of § 140(c) is confirmed in § 12-2-7(1), Ala. Code

_____

enactment may not encroach on the core judicial power," id. at 234, and to conclude that

> "[t]he Legislature exceeds its power in the area of rulemaking if its action 'prohibits the due and orderly processes by which [a] court functions, or prevents it from properly functioning,' Ex parte Foshee, 246 Ala. at 607, 21 So. 2d at 829, or disturbs the functions and orderly processes of the court, Broadway v. State, 257 Ala. 414, 418, 60 So. 2d 701, 704 (1952)."

Id.

1975, which echoes some of the language of Article V, § 2, of the 1819

Constitution and of the old § 140, stating in part:

"The Supreme Court shall have authority:

"(1) To <u>exercise</u> appellate jurisdiction coextensive with
the state, under such restrictions and regulations as are
prescribed by law ...."[15]

(Emphasis added.) In other words, the Supreme Court's exercise of the

appellate jurisdiction it possesses -- <u>because it cannot exercise what it</u>

<u>does not already possess</u> -- is subject to restrictions and regulations

provided by law.

Article VI, § 141, Ala. Const. 2022, which did not have a predecessor

in the old Judicial Article, explains the makeup of the courts of appeals

and explicitly permits both the Legislature by statutory enactment <u>and</u>

the Supreme Court by rule to establish their appellate jurisdiction.

"(a) <u>The court of criminal appeals</u> shall consist of such
number of judges as may be provided by law and <u>shall exercise</u>
<u>appellate jurisdiction under such terms and conditions as</u>
<u>shall be provided by law and by rules of the supreme court</u>.

---

[15]Subsections (2), (3), and (4) of § 12-2-7 repeat language found in
Article VI, § 140(b) and § 150. Such statutory repetition of the new
Judicial Article is not unusual. The <u>Schoenvogel</u> Court noted that
"coordinated confirmatory legislation was helpful for the purpose of
furthering the declaration of § 6.01 of the new judicial article [now Article
VI, § 139, Ala. Const. 2022,] that 'the judicial power of the state shall be
vested exclusively in a unified judicial system.'" 895 So. 2d at 234.

"(b) The court of civil appeals shall consist of such number of judges as may be provided by law and shall exercise appellate jurisdiction under such terms and conditions as shall be provided by law and by rules of the supreme court.

"(c) The court of criminal appeals and the court of civil appeals shall have no original jurisdiction except the power to issue all writs necessary or appropriate in aid of appellate jurisdiction of the courts of appeals.

"(d) The court of criminal appeals shall have and exercise original jurisdiction in the issuance and determination of writs of quo warranto and mandamus in relation to matters in which said court has appellate jurisdiction. Said court shall have authority to issue writs of injunction, habeas corpus and such other remedial and original writs as are necessary to give it a general superintendence and control of jurisdiction inferior to it and in matters over which it has exclusive appellate jurisdiction; to punish for contempts by the infliction of a fine as high as one hundred dollars, and imprisonment not exceeding ten days, one or both, and to exercise such other powers as may be given to said court by law."

(Emphasis added.)

In contrast to the limits placed on the Supreme Court's appellate jurisdiction in Article VI, § 140(c), the appellate jurisdiction granted to the courts of appeals is limited in § 141(a) and (b) by law and by rules promulgated by the Alabama Supreme Court. To be more precise, the courts of appeals' exercise of the appellate jurisdiction they possess is directed by statutes and by Supreme Court rules. In combination with §

48

150, subsections (a) and (b) of § 141 confirm the Supreme Court's rule-making authority, and they provide the background for what was assumed in <u>Lucas</u>, i.e., why the Supreme Court's rule-making authority allows it to direct the exercise of appellate jurisdiction.

I believe that the foregoing background provides a better understanding about the scope of § 12-3-10. Recalling that "the judicial power of the state" is vested in the Supreme Court, as well as the Court of Civil Appeals and other courts named in Article VI, § 139(a), of the Alabama Constitution, and that "[t]he supreme court shall have such appellate jurisdiction as may be provided by law," Article VI, § 140(c), <u>§ 12-3-10 clearly constitutes a restriction on the appellate jurisdiction of the Supreme Court; it does not grant jurisdiction to the Court of Civil Appeals</u> because the Court of Civil Appeals is already vested with "the judicial power" under Article VI, § 139(a), and with "appellate jurisdiction" under Article VI, § 141(b). When § 12-3-10 states that "[t]he Court of Civil Appeals shall have exclusive appellate jurisdiction," it is essentially a less confusing way of stating the same idea the Legislature proclaimed in § 2 of General Act No. 121 in 1911 about the Court of Appeals having "final appellate jurisdiction" in certain cases: that

49

appellate jurisdiction in certain civil cases -- which ordinarily would belong to the Supreme Court because it was the original and constitutionally established appellate court -- belongs instead to the Court of Civil Appeals.[16] A plain reading of § 12-3-10 does <u>not</u> state that the Court of Civil Appeals' appellate jurisdiction <u>only</u> extends to the types of cases listed in that statute, nor could it do so given that Article VI, § 141(b), grants the Supreme Court authority to dictate the "appellate jurisdiction" of the Court of Civil Appeals through rules it promulgates. Indeed, the numerous statutes and Supreme Court rules I discussed

---

[16]The Legislature carried forward the "final appellate jurisdiction" language in the 1940 Code. As <u>Coprich</u> observed:

"In the 1940 Alabama Code, the Legislature continued the existence of the Court of Appeals and repeated nearly verbatim the jurisdiction that that court originally possessed, i.e., that the Court of Appeals, 'except as to actions involving title to or possession of lands, ... shall have <u>final appellate jurisdiction</u> <u>of all suits at law</u> where the amount involved, exclusive of interests and costs[,] does not exceed the sum of one thousand dollars ....' Title 13, § 86, Ala. Code 1940 (emphasis added)."

<u>Coprich</u>, 406 So. 3d at 64 (first emphasis added). The Legislature shifted to the phrase "exclusive appellate jurisdiction" rather than "final appellate jurisdiction" in Act No. 987, § 3, in 1969 when it abolished the Court of Appeals, replacing it with the Court of Criminal Appeals and the Court of Civil Appeals. See <u>Coprich</u>, 406 So. 3d at 65.

earlier in this special writing amply illustrate that the Court of Civil Appeals possesses appellate jurisdiction that is not "exclusive" to what is mentioned in § 12-3-10.

That understanding of § 12-3-10 is also reinforced by the language of § 12-3-11, Ala. Code 1975, which states:

> "Each of the courts of appeals shall have and exercise <u>original jurisdiction</u> in the issuance and determination of writs of quo warranto and mandamus in relation to matters in which said court has <u>appellate jurisdiction</u>. Each court shall have authority to grant injunctions and issue writs of habeas corpus and such other remedial and original writs as are necessary to give it a general superintendence and control of jurisdiction inferior to it and in matters over which it has <u>exclusive appellate jurisdiction</u> and to punish for contempts by the infliction of a fine not exceeding $100.00 and imprisonment not exceeding 10 days, or both, and to exercise such other powers as may be given to such court by law."[17]

(Emphasis added.)

Section 12-3-11 illustrates that the courts of appeals possess "original jurisdiction," "appellate jurisdiction," and "exclusive appellate jurisdiction" for certain types of cases. Section 12-3-10 simply states that

---

[17]Article VI, § 141(d), Ala. Const. 2022, contains language nearly identical to § 12-3-11 except that subsection (d) specifically addresses the Court of Criminal Appeals. Thus, § 12-3-11 is another example of "coordinated confirmatory legislation" of the new Judicial Article. <u>Schoenvogel</u>, 895 So. 2d at 234.

the "exclusive appellate jurisdiction" of the Court of Civil Appeals requires that appeals of certain types of "civil cases" must first go to the Court of Civil Appeals rather than to the Alabama Supreme Court. In other words, the appellate jurisdiction of the Court of Civil Appeals clearly is not "exclusive[ly]" limited to matters listed in § 12-3-10; instead, the matters listed in § 12-3-10 must be "exclusive[ly]" appealed to the Court of Civil Appeals rather than to the Supreme Court. It is not that the Court of Civil Appeals only possesses "appellate jurisdiction" over the cases listed in § 12-3-10, but that it has "exclusive appellate jurisdiction" in those cases.

The foregoing understanding of § 12-3-10 also dovetails with the Supreme Court's power to transfer, or "deflect," cases to the Court of Civil Appeals that is proclaimed in § 12-2-7(6), Ala. Code 1975. Section 12-2-7(6) states:

> "The Supreme Court shall have authority:
>
> "….
>
> "(6) To transfer to the Court of Civil Appeals, for determination by that court, any civil case appealed to the Supreme Court and within the appellate jurisdiction of the Supreme Court, except the following:

52

"a. A case that the Supreme Court determines presents a substantial question of federal or state constitutional law.

"b. A case that the Supreme Court determines involves a novel legal question, the resolution of which will have significant statewide impact.

"c. A utility rate case appealed directly to the Supreme Court under the provisions of Section 37-1-140[, Ala. Code 1975].

"d. A bond validation proceeding appealed to the Supreme Court under the provisions of Section 6-6-754[, Ala. Code 1975].

"e. A bar disciplinary proceeding."

As I related earlier in this special writing, the R.B.Z. Court expressed the view that "[d]eflection is provided by § 12-2-7(6), which allows this Court to grant the Court of Civil Appeals jurisdiction over a case that this Court deflects to that court, provided the case does not fall into one of the exceptions listed." Ex parte R.B.Z., 725 So. 2d at 260 (emphasis added). By that understanding, the Supreme Court adds to the appellate jurisdiction of the Court of Civil Appeals every time the Supreme Court transfers a case to the Court of Civil Appeals under § 12-2-7(6). Respectfully, that interpretation misunderstands the power granted in that statute. Section 12-2-7(6) grants the Supreme Court

"authority ... [t]o transfer ... any civil case ... within the appellate jurisdiction of the Supreme Court" to the Court of Civil Appeals except cases that fall within the categories described in subsections a. through e. In describing those categories, subsections a. through c. use the phrase "a case," and subsections d. and e. use the term "proceeding." Thus, § 12-2-7(6) authorizes the Supreme Court to transfer "case[s]" and "proceeding[s]" that are "within the appellate jurisdiction of the Supreme Court" to the Court of Civil Appeals. In other words, such transfers occur on a case-by-case basis, not by expanding the appellate jurisdiction of the Court of Civil Appeals. If deflection involved increasing the Court of Civil Appeals' "exclusive appellate jurisdiction" the way the R.B.Z. Court understood that jurisdiction to be, then once the Supreme Court has deflected one case that falls within the categories described in subsections a. through e., any such case that fits those categories should be appealable to the Court of Civil Appeals because its appellate jurisdiction has been expanded to those categories of cases. Of course, deflection is not viewed that way precisely because the Supreme Court transfers "cases" under § 12-2-7(6), not types of cases. In short, the

54

Supreme Court does not expand the Court of Civil Appeals' appellate jurisdiction when it transfers cases to that court under § 12-2-7(6).

The better understanding of the authority granted under § 12-2-7(6) is that the Court of Civil Appeals already possesses appellate jurisdiction to entertain a case that is subject to transfer, but that the case was originally appealed to the Supreme Court because it did not fall within the "exclusive appellate jurisdiction" of the Court of Civil Appeals. In fact, when the Supreme Court transfers a case under § 12-2-7(6), it does via statutory authority exactly what Article VI, § 141(b), Ala. Const. 2022, empowers the Supreme Court to do by rule: direct the "exercise" of the appellate jurisdiction of the Court of Civil Appeals. Thus, contrary to the understanding expressed in Ex parte R.B.Z., § 12-2-7(6) supports the view that § 12-3-10 merely lists certain types of cases that must be appealed to the Court of Civil Appeals rather than limiting the appellate jurisdiction of the Court of Civil Appeals solely to the types of cases listed therein.

Based on the interpretation of § 12-3-10 I have explained, a case such as the present one conceivably could be appealed to either the Court of Civil Appeals or to the Supreme Court -- depending upon the amount

the appellant claims is involved. As the main opinion explains, here the appellants filed their appeal in the Court of Civil Appeals, thereby implicitly indicating that the "amount involved" does not exceed $50,000, and nothing in the record on appeal contradicts that indication. Conversely, if the appellants had filed their appeal in the Supreme Court, the implicit indication would have been that the "amount involved" exceeded $50,000, and nothing in the record on appeal contradicts that indication. If an appeal such as this one was filed in the Supreme Court, this Court could transfer the case to the Court of Civil Appeals as long as the transfer is not prohibited by § 12-2-7(6). Likewise, the Court of Civil Appeals could request that such a case appealed to their court be transferred to the Supreme Court under § 12-3-15, Ala. Code 1975. Neither of those scenarios occurred in this case, and the appellants in this case appealed to the Court of Civil Appeals, which is why we have transferred the case back to that court.

In any case that is appealed to either court, the starting point is where the appellant has elected to file the appeal. With the filing of a timely notice of appeal, the appellant has invoked the jurisdiction of our appellate courts. See, e.g., Ex parte G.L.C., 281 So. 3d 401, 408 (Ala.

2018) ("'[T]he only jurisdictional prerequisite for an appeal is the timely filing of a notice of appeal.' <u>Dunning v. New England Life Ins. Co.</u>, 890 So. 2d 92, 96 (Ala. 2003) (citing <u>Edmondson v. Blakey</u>, 341 So. 2d 481, 484 (Ala. 1976), and Committee Comments to Rule 3, Ala. R. App. P. ('Timely filing of the notice of appeal is a jurisdictional act. It is the only step in the appellate process which is jurisdictional.'))."). Rule 2(a)(1), Ala. R. App. P. ("An appeal shall be dismissed if the notice of appeal was not timely filed to invoke the jurisdiction of the appellate court."). The question that arises after a timely filing is which appellate court should hear the case? The initial answer to that question is the case goes where the appellant has elected to file the appeal. Of course, parties sometimes make mistakes, and in those situations in which it is clear that a case should have gone to the Court of Civil Appeals when the appeal has been filed in the Supreme Court or it is clear that the case should have gone to the Supreme Court when the appeal has been filed in the Court of Civil Appeals, the courts are authorized to transfer the case to the proper court under § 12-1-4, Ala. Code 1975.[18]

---

[18]Section 12-1-4 provides:

Concerning the "amount involved," after <u>Coprich</u>, the Notice of Appeal form ("the NOA") available on the Administrative Office of Courts website no longer contains "equitable relief" as a stand-alone category for appellate jurisdiction.[19] Instead, for an appeal to the Supreme Court, an appellant indicates that the amount claimed or awarded is "more than $50,000," and for an appeal to the Court of Civil Appeals, an appellate indicates that the amount claimed or awarded "equals $50,000 or less." In most cases, the appellant's selection in the NOA should constitute a sufficient indication of which appellate court should hear the case.[20]

---

"When any case is submitted to the Supreme Court which should have gone to one of the courts of appeals or is submitted to one court of appeals when it should have gone to the other, it must not be dismissed but shall be transferred to the proper court; and, when any case is submitted to a court of appeals which should have gone to the Supreme Court, it shall be transferred to the Supreme Court."

[19]At the time this opinion was issued, the NOA could be found at https://eforms.alacourt.gov/media/tghhkbxg/notice-of-appeal-cross-appeal-revised-10-24.pdf.

[20]In particular, the current NOA form should help eliminate jurisdictional uncertainties for cases in which a plaintiff failed to specify the amount of damages sought in the complaint and no award was recovered in the trial court.

If an appellee questions appellate jurisdiction based on the "amount involved," the respective clerk's office should check to see that, on the face of the complaint or in the order of the trial court declaring the amount of the recovery, whether the "amount involved, exclusive of interests and costs, does not exceed $50,000," and transfer or keep the case based on the answer. If the record is unclear from those indicia, then the clerk's office should assign the case to a judge's office for any further inquiry as to which appellate court should hear the case.

In my view, justices and judges may determine appellate jurisdiction with respect to the "amount involved" only from clear indications in the record on appeal -- as was the case in Coprich. See generally Locklear Auto. Grp., Inc. v. Hubbard, 252 So. 3d 67, 91 (Ala. 2017) ("'[W]e cannot consider evidence that is not contained in the record on appeal because this Court's appellate review "'is restricted to the evidence and arguments considered by the trial court.'" Ex parte Old Republic Sur. Co., 733 So. 2d 881, 883 n.1 (Ala. 1999) (quoting Andrews v. Merritt Oil Co., 612 So. 2d 409, 410 (Ala. 1992) ...).'" (quoting Roberts v. NASCO Equip. Co., 986 So. 2d 379, 385 (Ala. 2007))). Mathematical calculations and extrapolations from outside sources are unnecessary

and inappropriate.[21] If there is no clear answer as to the "amount involved" from the record on appeal, then the appellate court in which the appellant filed the appeal should proceed to decide the case because the filing constitutes a prima facie showing of jurisdiction, including an assertion by the appellant of the "amount involved" in the case.

Finally, I wish to emphasize that the Supreme Court has the authority to promulgate rules dictating the appellate jurisdiction of the Court of Civil Appeals and that § 12-3-15 encourages the Supreme Court and the Court of Civil Appeals to enter agreements for the transfer of cases from the Court of Civil Appeals to the Supreme Court "[w]hen it is deemed advisable or necessary for the proper dispatch of the business of the Alabama Court of Civil Appeals."[22] I believe that promulgating one

---

[21]Coprich, by virtue of its citations to and quotations from Ex parte Greene County Commission, 317 So. 3d 1005, 1006-07 (Ala. Civ. App. 2020), Ex parte Texas Loss Control Systems, LLC, 164 So. 3d 602, 605 (Ala. Civ. App. 2014), and Kirk v. Griffin, 667 So. 2d 1378, 1380 (Ala. Civ. App. 1995), see Coprich, 406 So. 3d at 61-62, as well as that opinion's use of the record on appeal, indicated that verification of the "amount involved" must be derived from the record itself -- the nature of the claims themselves, the language employed by the plaintiff in discussing the claims, and testimony or documents admitted in the trial court. Coprich in no way supported looking at outside sources to determine the "amount involved" in an appeal.

[22]Indeed, as Coprich noted:

or more rules would be prudent for particular situations that implicate the "amount involved" in an appeal. Such rules would vastly increase the efficiency of the appellate process by providing clear and explicit guidance to parties, appellate court-staff, and the justices and appellate judges of our state.

---

"[O]n September 16, 1975, Chief Justice of the Alabama Supreme Court Howell Heflin and Presiding Judge of the Alabama Court of Civil Appeals L. Charles Wright entered into an agreement on behalf of those courts that was ordered entered into the minutes of the Alabama Supreme Court and that sought 'to clarify jurisdictional questions between the two courts.' In part, that agreement stated: '(3) Appeals which contain both legal and equitable relief and the amount in controversy does not exceed $10,000 shall come within the jurisdiction of the Court of Civil Appeals.'"

Coprich, 406 So. 3d at 66-67. Unfortunately, that agreement was not adhered to in numerous cases over the course of the years leading up to Coprich. Even so, I believe it would be helpful for the two courts to reach a standing agreement if they find certain types of cases should first come to the Supreme Court.

61

SHAW, Justice (dissenting).

I see no constitutional, statutory, or rule-based authority indicating that the Court of Civil Appeals has jurisdiction in this case. Instead, I believe that this Court has appellate jurisdiction. Therefore, I respectfully dissent.

## I.

The Alabama Constitution of 2022, Art. VI, § 139(a), designates the department of our state government in which "judicial power" is vested. In other words, it creates our judicial branch. It states:

"Except as otherwise provided by this Constitution, the judicial power of the state shall be vested exclusively in a unified judicial system which shall consist of a supreme court, a court of criminal appeals, a court of civil appeals, a trial court of general jurisdiction known as the circuit court, a trial court of limited jurisdiction known as the district court, a probate court and such municipal courts as may be provided by law."

Under this provision, "judicial power" is vested in a "unified judicial system," and the parts of that system -- the courts -- are identified. I do not believe that § 139(a), in doing this, directly vests the parts identified with appellate jurisdiction. If, standing alone, § 139(a) does so, then it would appear that the Court of Civil Appeals is empowered to hear all civil and criminal appeals, the Court of Criminal Appeals is empowered

to hear all civil and criminal appeals, and the probate courts and municipal courts are empowered to hear all civil and criminal appeals. Curiously, circuit courts would <u>not</u> be empowered with appellate jurisdiction, as those courts are identified as "a trial court of general jurisdiction." But circuit courts in this State do have appellate jurisdiction in certain cases; such appellate jurisdiction is provided in a <u>different place</u> in the Constitution.[23] Similarly, as discussed below, the Constitution, separate from § 139(a), specifically addresses the jurisdiction, appellate and otherwise, of the Supreme Court, the Court of Criminal Appeals, and the Court of Civil Appeals.

## II.

The powers of the Supreme Court are established in Ala. Const. 2022, Art. VI, § 140:

> "(a) The supreme court shall be the highest court of the state and shall consist of one chief justice and such number of associate justices as may be prescribed by law.
>
> "(b) The supreme court shall have original jurisdiction (1) of cases and controversies as provided by this Constitution, (2) to issue such remedial writs or orders as may be necessary to give it general supervision and control of courts of inferior

---

[23]See Ala. Const. 2022, Art. VI, § 142(b) ("The circuit court may be authorized by law to review decisions of state administrative agencies and decisions of inferior courts.").

jurisdiction, and (3) to answer questions of state law certified by a court of the United States.

"(c) The supreme court shall have such appellate jurisdiction as may be provided by law."

Subsection (b) establishes that the Supreme Court has original jurisdiction in certain types of cases. The power provided is inherent and does not need to be authorized by separate law.

Subsection (c) addresses this Court's appellate jurisdiction. The "appellate jurisdiction" that this Court "shall have" is "such" that "may be provided by law." Thus, the Supreme Court has appellate jurisdiction if it is provided by legislation (or other "law"). If there is no statute (or other "law") providing appellate jurisdiction, then "such" jurisdiction does not exist. Unlike subsection (b), subsection (c) is a framework provision of the Constitution that does not confer power; instead, it sets a structure that may be defined at a later time "by law"; it is not self-executing. It is not unusual for the Constitution to provide original jurisdiction but leave appellate jurisdiction to be established later by statute; the ability or right of a party to appeal a court decision to a higher court is provided by statute in the first place. See Ellison v. State, 55

Ala. App. 50, 54, 312 So. 2d 632, 636 (Crim. App. 1975) (noting that appeals are statutory creatures and were unknown to the common law).

The powers of our courts of appeals are defined in Ala. Const. 2022, Art. VI, § 141:

> "(a) The court of criminal appeals shall consist of such number of judges as may be provided by law and shall exercise appellate jurisdiction under such terms and conditions as shall be provided by law and by rules of the supreme court.
>
> "(b) The court of civil appeals shall consist of such number of judges as may be provided by law and shall exercise appellate jurisdiction under such terms and conditions as shall be provided by law and by rules of the supreme court.
>
> "(c) The court of criminal appeals and the court of civil appeals shall have no original jurisdiction except the power to issue all writs necessary or appropriate in aid of appellate jurisdiction of the courts of appeals.
>
> "(d) The court of criminal appeals shall have and exercise original jurisdiction in the issuance and determination of writs of quo warranto and mandamus in relation to matters in which said court has appellate jurisdiction. Said court shall have authority to issue writs of injunction, habeas corpus and such other remedial and original writs as are necessary to give it a general superintendence and control of jurisdiction inferior to it and in matters over which it has exclusive appellate jurisdiction; to punish for contempts by the infliction of a fine as high as one hundred dollars, and imprisonment not exceeding ten days, one or both, and to exercise such other powers as may be given to said court by law."

(Emphasis added.)

65

Subsection (b) discusses the appellate jurisdiction of the Court of Civil Appeals as follows:

> "The court of civil appeals … shall exercise appellate jurisdiction under such terms and conditions as shall be provided by law and by rules of the supreme court."

Under § 141(b), the appellate jurisdiction that the Court of Civil Appeals "shall exercise" is "provided by law and by rules of the supreme court." It appears to anticipate that the court's appellate jurisdiction will be subject to ("under") certain conditions, that is, limited in nature. This would not be unusual if the Court of Civil Appeals was intended to have limited appellate jurisdiction, as was the case with the prior Court of Appeals of Alabama.[24] See Coprich v. Jones, 406 So. 3d 58, 63-65 (Ala. 2024) (discussing the statutorily created and now-abolished Court of Appeals of Alabama and the appellate jurisdiction that court originally possessed). The appellate jurisdiction of the Court of Civil Appeals, like that of this Court, is provided by statute, but it can also be provided by this Court's rules. The same is true for the Court of Criminal Appeals under § 141(c).

---

[24]I express no opinion as to the "intent" of § 141(b).

66

The Constitution did not create three appellate courts possessing inherent, equal jurisdiction in all appellate matters; if that were so, then without later legislation, all three courts would be empowered to hear all appeals in both civil and criminal cases. Instead, the Constitution in § 140(c) and § 141(b)-(c) left the issue of appellate jurisdiction as a whole to the legislature, assuming it saw fit to provide the right to appeal in the first place.

## III.

As noted above, legislation ("law") provides for the appellate jurisdiction of our appellate courts. There are some Code sections providing that certain specific types of matters may be appealed to the Supreme Court. See, e.g., Ala. Code 1975, § 12-22-21 (providing that appeals from certain probate-court decisions "may be taken by the party aggrieved to the circuit court or Supreme Court"), and § 37-1-140 (providing that an "appeal" from certain actions or decisions of the Alabama Public Service Commission "shall lie directly to the Supreme Court of Alabama"). Statutes such as these clearly indicate that the Supreme Court has the appellate jurisdiction to hear those appeals, even if they have no such rote recitation.

Section 12-2-7(1), Ala. Code 1975, however, speaks to the issue of this Court's appellate jurisdiction generally as follows:

"The Supreme Court shall have authority:

"(1) To exercise appellate jurisdiction coextensive with the state, under such restrictions and regulations as are prescribed by law …."

I read this Code section to mean that this Court is given appellate jurisdiction ("shall have") and may use it unless there is a separate restriction of it. Section § 140(c) requires this authorization to be given by the legislature because it says that appellate jurisdiction must "be provided by law." In summary, § 12-2-7(1) grants to this Court unrestricted appellate jurisdiction, while recognizing that exceptions ("restrictions and regulations") to that jurisdiction can be further specified by law.[25] See Matthews v. State, [Ms. SC-2024-0447, Apr. 25, 2025] ___ So. 3d ___, ___ (Ala. 2025) (citing § 12-2-7(1) for the proposition that, "[g]enerally, this Court's appellate jurisdiction encompasses appeals from final judgments in cases that are not within the exclusive

---

[25]The "coextensive with the state" language of § 12-2-7(1) merely refers to the geographical bounds of the jurisdiction and is not otherwise indicative of the substantive extent of that jurisdiction.

68

jurisdiction of either the Court of Criminal Appeals or the Court of Civil

Appeals" (footnotes omitted)).

The "law" generally addressing the appellate jurisdiction of the

Court of Civil Appeals, which is at issue in this case, is found in § 12-3-

10, Ala. Code 1975.[26]  It states:

> "The Court of Civil Appeals shall have exclusive appellate jurisdiction of[:] all civil cases where the amount involved, exclusive of interest and costs, does not exceed $50,000[;] all appeals from administrative agencies other than the Alabama Public Service Commission[;] all appeals in workers' compensation cases[;] all appeals in domestic relations cases, including annulment, divorce, adoption, and child custody cases[;] and all extraordinary writs arising from appeals in said cases. Where there is a recovery in the court below of any amount other than costs, the amount of such recovery shall be deemed to be the amount involved; otherwise, the amount claimed shall be deemed to be the amount involved; except, that in actions of detinue the alternate value of the property as found by the court or jury shall be deemed to be the amount involved."

(Emphasis added).[27]

---

[26]The original version of § 12-3-10 was enacted by Ala. Acts 1969, Act No. 987, § 3.  Among other things, that act initially created the Court of Civil Appeals and Court of Criminal Appeals and defined the respective jurisdiction of those courts.

[27]Other Code sections and rules may additionally provide appellate jurisdiction in different, specific types of cases.

This Code section conveys to the Court of Civil Appeals appellate jurisdiction over certain "cases" and "appeals." The "appeals" specified are narrow categories of matters, namely, administrative, domestic-relations, and workers' compensation matters, and the "cases" are "civil cases where the amount involved, exclusive of interest and costs, does not exceed $50,000." The appellate jurisdiction granted, unlike in § 12-2-7(1), is specific and limited in scope. See Ex parte R.B.Z., 725 So. 2d 257, 258 & 60 (Ala. 1997) (stating both that "[§] 12-3-10, Ala. Code 1975, governs the appellate jurisdiction of the Court of Civil Appeals" and that "[t]he only way the Court of Civil Appeals may take jurisdiction over a matter not expressly assigned to that court by § 12-3-10 is by a transfer pursuant to § 12-2-7(6), a transfer commonly called 'deflection' ").[28] The jurisdiction being granted is also "exclusive," which in turn restricts or regulates the Supreme Court's appellate jurisdiction from the cases and appeals

_____

[28]It is true that the Court in Ex parte R.B.Z. did not also recognize that there are other specific Code sections and rules that provide the Court of Civil Appeals with additional appellate jurisdiction in limited circumstances. I think, however, that the Court was addressing the Court of Civil Appeals' authority to hear appeals generally, and § 12-3-10 is the general provision regulating that jurisdiction.

specified; otherwise, those matters could be appealed to either this Court or the Court of Civil Appeals.

As noted above, I do not believe that the Constitution grants concurrent appellate jurisdiction to all three of our appellate courts, and any restriction of each courts' appellate jurisdiction is found only in separate law. If it does, then § 12-3-10 must be read to not provide appellate jurisdiction to the Court of Civil Appeals, but instead to merely restrict the Supreme Court from exercising appellate jurisdiction in certain cases and appeals. This would further mean that the Court of Civil Appeals would have not only concurrent jurisdiction with the Supreme Court -- it would be able to hear any civil appeal -- it would also mean that the Court of Civil Appeals has more appellate jurisdiction than that provided to the Supreme Court in civil cases.

Pertinent in this appeal is the appellate jurisdiction conferred by the "amount involved" clauses of § 12-3-10. Appellate jurisdiction is conferred in "civil cases," which term would include claims that sound in law or in equity, when there is a "recovery" of an "amount" that does not exceed $50,000 or when there is no recovery of an amount but an amount is "claimed" that does not exceed $50,000. This anticipates cases in which

71

a money judgment is demanded or awarded. Clearly the "amount involved" must refer to money because a specific dollar amount -- $50,000 -- is specified as the ceiling. But if no money is claimed or recovered, then the "case" has no "amount involved."

Any distinction between claims that are legal or equitable in nature is not material because § 12-3-10 refers to "all civil cases." Legal cases, generally speaking, will have an amount involved because there is either a request for damages (money) or damages are awarded, thus establishing an "amount involved" -- a dollar amount -- in the terms specified by § 12-3-10. Equitable cases can also have an amount involved. See McCullough v. Windyke Country Club, Inc., 389 So. 3d 344, 347 (Ala. 2023) (holding that a $500 judgment that was "injunctive in nature" -- thus sounding in equity -- established an "'amount involved' not exceeding $50,000"). But equitable cases often have no amount involved. Nonetheless, § 12-3-10 refers to "the amount involved"; thus, an "amount" must be "involved" for the Code section, and thus the appellate jurisdiction of the Court of Civil Appeals, to be triggered.

Coprich, supra, involved an action seeking to set aside a deed to real property that the record clearly established was valued at less than

$50,000. We held that the property value constituted an "amount involved." 406 So. 3d at 63. Intuitively, I concurred in Coprich. Clearly that case "involved" a claim with a value that did not exceed $50,000. However, I recognize that, under my above discussion of the plain language of § 12-3-10, we should look only to "the amount involved" and not a value attached to property that may be involved. But Coprich is a precedent of this Court that has not been challenged by the parties. Nevertheless, as discussed below, there is no clear property value at issue in this case to establish an "amount involved" for purposes of that decision.

## IV.

In this case, the plaintiffs do not claim an amount of money to be recovered. As argued by the attorney general in the motion to transfer this appeal from the Court of Civil Appeals to this Court: "Plaintiffs here neither recovered nor claimed any 'amount.' … They instead sought injunctive relief …." The complaint seeks only that declarations be made and injunctions be issued; so, any judgment of the trial court in favor of the plaintiffs would be a declaratory judgment providing injunctive relief. Such relief, in any action, might have downstream economic effects or a

hypothetical value.[29]  However, such considerations are not pertinent in determining an "amount involved" under the terms of § 12-3-10 (or by Coprich).  With no "amount involved," the appellate jurisdiction afforded to the Court of Civil Appeals by § 12-3-10 is not invoked; thus, that Code section does not supply the Court of Civil Appeals with appellate jurisdiction over this appeal.  Instead, this Court has jurisdiction pursuant to § 12-2-7(1).

In light of the above, I respectfully dissent from transferring this case to the Court of Civil Appeals.

Stewart, C.J., and McCool, J., concur.

---

[29]I express no opinion on whether, despite the absence of a damages request or recovery, the relief sought by the plaintiffs would nevertheless affect a contract or property right of the State or otherwise could ultimately touch the State treasury, as the attorney general argues. Such an analysis is entirely different from determining whether there is an "amount involved" for purposes of § 12-3-10.